IN THE COURT OF COMMON PLEAS

MIAMI COUNTY, OHIO

STATE EX REL. TED MARCUM

2042 NORTH COUNTY RD. 25-A

TROY, OHIO 45373

    PLAINTIFF/PETITIONER,

      VS.

SHERIFF DAVE DUCHAK.,

ELIZABETH S. GUTMANN., JUDGE,

STACY WALL, ASSN'T PROSECUTOR.,

STEVE LAYMAN, PUBLIC DEFENDER.,

ROB DAVIE, CORRECTIONAL OFFICER.,

201 WEST MAIN STREET

TROY, OHIO 45373

    DEFENDANTS/RESPONDENTS.

FILED
MIAMI COUNTY
COMMON PLEAS COURT
17 NOV 21 PM 2:33
JAN A. MOTTINGER
CLERK OF COURTS

CASE NO. **17-480**

CHRISTOPHER GEE, JUDGE

---

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

PURSUANT TO 42 U.S.C. § 1983, AND FOR DECLARA-

TORY JUDGMENT AND INJUNCTION RELIEF,

AND WRIT(S) OF HABEAS CORPUS AND MANDAMUS

---

RESPECTFULLY SUBMITTED,

Ted Marcum

TED MARCUM, PRO SE

2042 NORTH COUNTY RD. 25-A

TROY, OHIO 45373

(i)

## OFFICIAL AND INDIVIDUAL CAPACITY CLAIMS

(1) HONORABLE JUDGE ELIZABETH S. GUTMANN IS SUED ONLY IN HER OFFICIAL CAPACITY. NO MONETARY RELIEF IS SOUGHT. HOWEVER, MANDAMUS AND INJUNCTION RELIEF IS REQUESTED AS WELL AS DECLARATORY JUDGMENT.

(2) ASSNT. MIAMI COUNTY PROSECUTOR IS SUED ONLY IN HER OFFICIAL CAPACITY. NO MONETARY DAMAGES ARE SOUGHT. HOWEVER, INJUNCTION RELIEF AND DECLARATORY JUDGMENT ARE REQUESTED.

(3) DAVE DUCHAK, SHERIFF OF MIAMI COUNTY, IS SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITY. TEN THOUSAND IN PUNITIVE DAMAGES, AND ONE HUNDRED THOUSAND DOLLARS FOR COMPENSATORY DAMAGES. AS WELL AS DECLARATORY/INJUNCTION.

(4) STEVE LAYMAN, AS A REPRESENTIVE FOR MIAMI COUNTY PUBLIC DEFENDER'S OFFICE, IS SUED ONLY IN HIS OFFICIAL CAPACITY. AN AWARD OF ONE HUNDRED THOUSAND DOLLARS IS REQUESTED AS COMPENSATORY DAMAGES, AS WELL AS DECLARATORY JUDGMENT AND INJUNCTION RELIEF.

(ii)

## JURISDICTION

(a) THE COURTS OF COMMON PLEAS IN OHIO HAVE CONCURRENT JURISDICTION WITH THE FEDERAL COURTS TO DECIDE CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. SEC. 1983.

(b) WHEN RULING ON A CLAIM UNDER 42 U.S.C. SEC. 1983, A COURT HAS JURISDICTION TO ISSUE DECLARATORY JUDGMENT AND INJUNCTION RELIEF IN OHIO PURSUANT 28 U.S.C. SEC. 2201 AND PURSUANT TO O.R.C. SEC. 2721.01 TO 2721.15 AND 2727.02 et SEQ. AND OHIO CIV. 57 AND 65.

(c) A COURT IN OHIO IS AUTHORIZED TO HAVE JURISDICTION AND GRANT WRITS OF MANDAMUS PURSUANT TO O.R.C. § 2731.01, 2731.02 TO 2731.16 IN COMMON PLEAS.

(d) A COURT OF COMMON PLEAS HAS JURISDICTION TO GRANT AND ISSUE WRITS OF HABEAS CORPUS PURSUANT TO 2725.01 TO 2725.28.

(1)

I. RELIEF PRAYED FOR IN HABEAS CORPUS

(a) ISSUANCE OF THE PETITION FOR WRIT OF HABEAS CORPUS IS PRAYED FOR BASED ON ALL THE FOLLOWING GROUNDS: (i) THE TRIAL COURT JUDGE, HONORABLE JUDGE ELIZABETH S. GUTMANN, WAS WITHOUT "JURISDICTION" TO IMPOSE THE 180 DAY JAIL SENTENCE THAT SHE IMPOSED ON OCTOBER 12TH, 2017, WHEN THE PETITIONER, TED MARCUM, WAS NOT REPRESENTED BY COUNSEL AT THE "SENTENCING HEARING," AND WHERE THE PETITIONER NEVER "WAIVED" HIS RIGHT TO BE REPRESENTED BY COUNSEL AT THE "SENTENCING" PHASE OF THE PRO- CEEDINGS.

(b) THE MIAMI COUNTY MUNICIPAL COURT WAS WITHOUT "JURISDICTION" TO IMPOSE THE SENTENCE IN THIS CASE WHEN THE PETI- TIONER HAD NEVER KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY WAIVE HIS RIGHT TO COUNSEL DURING THE "SENTENCING" PHASE OF THE PROCEEDINGS, AND WHERE THE SENTENCING JUDGE, HONORABLE JUDGE GUTMANN, NEVER ADVISED PETITIONER OF THE WAIVER OF COUNSEL AT SENTENCING.

(2)

(c) PETITIONER, TED MARCUM, STATES THAT THE SENTENCING HEARING CONDUCTED ON OCTOBER 12TH, 2017, BY HONORABLE JUDGE ELIZABETH S. GUTMANN, WAS ARBITRARY, UNCONSTITUTIONAL, AND VOID, ON GROUNDS THAT THE JUDGE WAS NOT ACTING IN A NEUTRAL AND DETACHED MANNER, BUT HAD, IN FACT, ACTED IN A CONSPIRACY WITH THE ASSNT. MIAMI COUNTY PROSECUTING ATTY, MS. STACY WALL, WHEN BOTH THE JUDGE AND ASSNT. MIAMI COUNTY PROSECUTING ATTY, ACTED IN CAHOOTS TOGETHER IN DEPRIVING PETITIONER, TED MARCUM, OUT OF HIS STATUTORY AND CONSTITUTIONAL RIGHT TO COUNSEL, IN VIOLATION OF OHIO CRIMINAL RULE 44(B), AND IN VIOLATION OF ART. I, SEC. 2, 10 AND 16 OF THE OHIO CONSTITUTION., AND IN VIOLATION OF THE 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION., AND IN VIOLATION OF OHIO RULES OF PROFESSIONAL CONDUCT., AND IN VIOLATION OF CANNONS CODE OF ETHICS. THUS THE WRIT OF HABEAS CORPUS IS PRAYED FOR DIRECTING THE RESPONDENT, SHERIFF DAVE DUCHACK, TO IMMEDIATELY DISCHARGE THE PETITIONER, TED MARCUM, FROM CUSTODY.

(3)

(d) PETITIONER, TED MARCUM, STATES
THAT HE IS ENTITLED TO HABEAS CORPUS
RELIEF ON GROUNDS THAT SHERIFF DAVE
DUCHACK, LIKEWISE, VIOLATED PETITIONER
TED MARCUM, RIGHT TO COUNSEL, IN VIOLA-
TION OF OHIO REV. CODE SEC. 2935.14 AND
2935.20, AND IN VIOLATION OF ART. I, SEC.
2, 10, AND 16 OF THE OHIO CONSTITUTION., AND
IN VIOLATION OF THE 5TH, 6TH, AND 14TH
AMENDMENTS TO THE UNITED STATES CON-
STITUTION, ON GROUNDS THAT THE SHERIFF
HAS A POLICY PRACTICE IN MIAMI COUNTY,
OHIO, THAT PREVENTS INMATES FROM BEING
ALLOWED ONE "FREE" PHONE CALL FOR PUR-
POSES OF CALLING AN ATTORNEY OR A
BAIL BONDSMAN UPON THAT INDIVIDUAL'S
INITIAL ARREST. THUS, THE SHERIFF
HIMSELF VIOLATED PETITIONER/MARCUM'S
RIGHT TO OBTAIN COUNSEL WHEN THE
SHERIFF ENFORCES A LOCAL POLICY PRAC-
TICE THAT PREVENTED PETITIONER-
MARCUM FROM BEING GIVEN A "FREE"
PHONE CALL FOR PURPOSES OF CONTACTING
AN ATTORNEY, AND WHERE THE SHERIFF
DENIED PETITIONER/MARCUM'S GRIEVANCES
AT MIAMI COUNTY JAIL TO BE GIVEN
A "FREE" PHONE CALL TO CONTACT AN
ATTORNEY.

(4)

II. RELIEF PRAYED FOR IN MANDAMUS

(a) PETITIONER, TED MARCUM, STATES THAT
HE IS ENTITLED TO OBTAIN A WRIT
OF MANDAMUS AGAINST HONORABLE JUDGE
ELIZABETH S. GUTMANN, ORDERING MS.
GUTMANN TO MAKE A RULING ON A PRO
SE MOTION THAT PETITIONER, TED
MARCUM, FILED IN CASE NO. 2017 CRA 3729,
CAPTIONED AS: "MOTION TO VACATE SENTENCE
AND FOR NEW SENTENCING HEARING."
PETITIONER FILED HIS MOTION TO VACATE
SENTENCE AND FOR RESENTENCING HEARING,
FILED ON OCTOBER 16, 2017, IN THE MIAMI
COUNTY MUNICIPAL COURT. JUDGE GUTMANN
HAS NOT RULED UPON THAT PRO SE MOTION.
A COPY OF THAT MOTION HAD BEEN
SERVED UPON MS. GUTMANN, AND WAS
ALSO SERVED UPON THE ASSNT. MIAMI
COUNTY PROSECUTING ATTY, STACY WALL,
AND UPON MR. STEPHEN KING, ASSNT.
MIAMI COUNTY PUBLIC DEFENDER. NO
ONE HAS REPLIED OR RESPONDED TO THAT
MOTION. PETITIONER/MARCUM STATES THAT
HE IS ENTITLED TO MANDAMUS RELIEF
ORDERING JUDGE GUTMANN TO PROCEED
TO AN IMMEDIATE HEARING ON THAT
MOTION AND TO GRANT THE SAME FORTHWITH.

(5)

(b) PETITIONER/MARCUM ALSO STATES THAT HE IS ENTITLED TO MANDAMUS RELIEF AGAINST SHERIFF DAVE DUCHACK ORDERING THE SHERIFF TO PROVIDE A "FREE" PHONE CALL TO PETITIONER/MARCUM FOR PURPOSES OF CALLING AN ATTORNEY, AND FOR PURPOSES OF OBTAINING COUNSEL TO REPRESENT TO ASSIST MARCUM WITH HIS CURRENT LEGAL AFFAIRS. MARCUM STATES THAT NO LAW ENFORCEMENT AGENCY IN MIAMI COUNTY HAS EVER PROVIDED A "FREE" PHONE CALL TO MARCUM. MARCUM STATES THAT DUE TO THE POLICY PRACTICE IN QUESTION, HAS PREVENTED MARCUM FROM CALLING A FRIEND OR FAMILY MEMBER, AND THUS PREVENTED MARCUM FROM HAVING ANY MONEY DEPOSITED INTO MARCUM'S INMATE ACCOUNT, AT THE JAIL, AND THUS PREVENTS MARCUM FROM BEING ABLE TO USE THE INMATE PHONES AT ALL. THE POLICY-PRACTICE IN QUESTION IS A "CATCH 22." IT IS THE ASSUMPTION OF PETITIONER THAT THE LOCAL POLICY VIOLATES THE OHIO REVISED CODE., IT VIOLATES STATUTES OF THE UNITED STATES CODE., AND VIOLATES BOTH THE FEDERAL AND STATE CONSTITUTION OF OHIO., AND IS DESIGNED FOR NO OTHER LEGITIMATE

(6)

REASON, EXCEPT FOR PURPOSELY PREVENT-
ING ARRESTEES' FROM BEING ABLE
TO EXERCISE THEIR 5TH AMENDMENT
RIGHT TO REMAIN SILENT, AND OF
THEIR 6TH AMENDMENT RIGHT TO OBTAIN
COUNSEL. ACCORDINGLY, THE WRIT OF
MANDAMUS IS PRAYED FOR AGAINST
SHERIFF DAVE DUCHACK ORDERING, AS
A MATTER OF LAW, THAT HE IS STATU-
TORILY OBLIGATED, AS WELL AS CON-
STITUTIONALLY MANDATED, TO PROVIDE
A "FREE" PHONE CALL, TO ALL
ARRESTEES' IN MIAMI COUNTY, OHIO.
    THE WRIT OF MANDAMUS WILL LIE,
WHERE THE RESPONDENT IS UNDER A
CLEAR LEGAL DUTY TO PERFORM THE
RELIEF REQUESTED, AND WHERE THERE
IS NO OTHER ADEQUATE LEGAL REMEDY
REMAINING IN THE ORDINARY COURSE
OF LAW.
    IN THE PRESENT CASE, MARCUM
FILED GRIEVANCES WITH THE JAIL
DEMANDING THE RIGHT TO A "FREE"
PHONE CALL. THOSE GRIEVANCES WERE
DENIED. THE SHERIFF HAS A STATUTORY
DUTY, AS WELL AS A CONSTITUTIONAL DUTY
TO PERFORM THE RELIEF REQUESTED, AND
MARCUM HAS NO OTHER ADEQUATE LEGAL REMEDY.

(7)

III. RELIEF IS ALSO PRAYED FOR BY WAY OF DECLARATORY JUDGMENT AND INJUNCTION RELIEF PURSUANT TO 42 U.S.C. § 1983

PLAINTIFF/PETITIONER, TED MARCUM, SEEKS DECLARATORY JUDGMENT AND INJUNCTION RELIEF IN REFERENCE TO UNCONSTITUTIONAL POLICY PRACTICES OCCURING AT THE MIAMI COUNTY JAIL FACILITIES, AT THE MIAMI COUNTY MUNICIPAL COURT, AND AT THE MIAMI COUNTY PUBLIC DEFENDERS OFFICE, AND THE MIAMI COUNTY PROSECUTING ATTORNEY'S OFFICE.

VI.     MONETARY DAMAGES

AN AWARD OF TEN THOUSAND DOLLARS $10,000 PUNITIVE DAMAGES REQUESTED RELIEF TO BE PAID BY THE SHERIFF, DAVE DUCHAK, BASED ON HIS WRITTEN POLICIES PREVENTING INMATES FROM CALLING THE PUBLIC DEFENDER'S OFFICE AS WRITTEN IN THE INMATE HANDBOOK. AN AWARD OF ONE HUNDRED THOUSAND DOLLARS ($100,000) IS REQUESTED TO BE PAID BY THE COUNTY FOR AN OFFICIAL CAPACITY CLAIM AS COMPENSATORY DAMAGES BASED ON THE POLICY BETWEEN THE SHERIFF AND PUBLIC DEFENDER.

(8)

## STATEMENT OF CASE AND FACTS

ON OCTOBER 5TH, 2017, AT APPROXIMATELY 2:00 P.M., PLAINTIFF/PETITIONER, TED MARCUM WAS ARRESTED BY A CITY OF TROY, OHIO POLICE OFFICER NAMED SCOTT GATES, AND WAS CHARGED WITH A F.5 FELONY "BEE." MARCUM DENIED HAVING INTENDED TO STEAL ANYTHING. HOWEVER, MARCUM ADMITTED TO GOING INTO AN OPEN "DOOR WAY" TO GET OUT OF THE RAIN, AND TO CATCH HIS BREATH, AND TO FIX HIS PANTS. NOTHING WAS STOLEN, NOR WAS ANYTHING ATTEMPTED TO BE STOLEN.

OFFICER GATES DID NOT ADVISE MARCUM OF HIS "MIRANDA RIGHTS" AS REQUIRED BY THE SUPREME COURT DECISION IN MIRANDA VS. ARIZONA, (1966), 384 U.S. 436.

OFFICER GATES REPEATEDLY KEPT ASK-ING MARCUM WHAT HE WAS DOING AT THE GARAUGE? MARCUM EXPLAINED THAT HE WAS "CATCHING HIS BREATH" AND WAS "GETTING OUT THE RAIN," AND "FIXING MY PANTS."

OFFICER GATES THEN ASKED: "WELL, 'IF' YOU WERE TO STEAL SOMETHING ... " WHAT WOULD IT BE?" MARCUM ANSWERED: "NOTHING," BUT ADDED, WELL, SINCE ITS RAINING, A "BIKE" MAYBE. IT WAS AT THAT POINT THAT MARCUM WAS TAKEN TO THE STATION HOUSE. AT THE POLICE DEPT,

(8)

MARCUM REQUESTED TO BE PROVIDED WITH A "PHONE CALL." OFFICER GATES STATED THAT THE JAIL PROVIDES INMATES WITH TELEPHONES FOR PURPOSES OF CONTACTING A BONDSMAN OR TO CONTACT AN ATTORNEY.

MARCUM WAS TRANSPORTED TO THE "NEW" MIAMI COUNTY JAIL IN TROY, OHIO, AND WAS BOOKED IN. MARCUM REQUESTED TO BE PROVIDED WITH A "FREE" PHONE CALL. THE JAIL INFORMED MARCUM THAT THE SHERIFF, DAVE DUCHACK, HAS A PER SE POLICY THAT DOES NOT OFFER "FREE" PHONE CALLS, EVEN ONES THAT ARE REQUESTED FOR PURPOSES OF CONTACTING A BONDSMAN OR TO CONTACT AN ATTORNEY. THUS, MARCUM HAS NOT BEEN ABLE TO CALL ANYONE.

THE NEXT MORNING, FRIDAY, OCTOBER 6TH, 2017, MARCUM HAD A VIDEO ARRAIGNMENT AT THE MIAMI COUNTY MUNICIPAL COURT. MARCUM FILLED OUT PAPERS REQUESTING FOR COUNSEL TO BE APPOINTED. BOND WAS SET AT $5000.00. JUDGE GUTMANN SCHEDULED THE CASE FOR A PRELIMINARY HEARING TO TAKE PLACE FOR THE FOLLOWING WEEK FOR OCTOBER 12TH, 2017. THAT NEXT WEEK, MARCUM WAS TAKEN TO THE MIAMI COUNTY MUNICIPAL

(9)

COURT ON OCT. 12, 2017. ONCE INSIDE THE COURT ROOM, A FEMALE ASSNT PROSECUTOR NAMED MS. STACY WALL COMES INTO THE COURT ROOM AND BEGAN A CONVERSATION WITH WITH JUDGE GUTMANN IN CHAMBERS. MS WALL EXITS THE COURT CHAMBERS AND APPROACHES THE PETITIONER, TED MARCUM, AND NOTIFIES THIS PETITIONER THE SHE "NEEDS TO TALK" WITH HIM. MARCUM IS ESCORTED OUT OF THE COURT ROOM INTO A HALLWAY. MS. WALL INFORMS MARCUM THAT THE COURT HAS NOT PROVIDED COUNSEL YET. MS. WALL SAYS THAT SHE WAS "AMENDING" THE F.5 B&E CHARGE DOWN TO AN "ATTEMPTED" B&E CHARGE (M.1). MS. WALL ADVISES MARCUM TO "WAIVE" HIS RIGHT AND ENTER A PLEA FOR THAT DAY AT A "CHANGE OF PLEA HEARING." MARCUM WAS ESCORTED BACK INSIDE JUDGE GUTMANN COURT AND MS. WALL GOES BACK INTO MS. GUTMANN'S CHAMBERS. AFTER AWHILE, MS. GUTMANN COMES OUT OF CHAMBERS AND CALLS FOR TED MARCUM TO APPROACH THE DEFENSE TABLE. MS. GUTMANN ASKS MARCUM IF HE WISHES TO WAIVE HIS RIGHT TO COUNSEL FOR A "CHANGE OF PLEA HEAR-ING?" MARCUM RESPONDS "YES." THE

(10)

LOWER COURT THEN ASKS MARCUM, AS TO THE
CHARGE OF "ATTEMPTED B.E.E.," HOW DO YOU
PLEAD? PETITIONER/MARCUM RESPONDED: "NO
CONTEST." HONORABLE JUDGE GUTMANN THEN
IMPOSES A SENTENCE OF 180 DAYS FOR
MARCUM TO SERVE IN JAIL. IT WAS AT THAT
POINT THAT MARCUM ASKED MS. GUTMANN TO
"APPOINT COUNSEL" TO FILE A NOTICE OF
APPEAL. MS. GUTMANN SAID SHE DOESN'T HAVE
TO APPOINT COUNSEL TO FILE NOTICE OF APPEAL.
    FOUR (4) DAYS LATER ON OCTOBER 16TH,
2017, PLAINTIFF/PETITIONER TED MARCUM
FILES A PRO SE MOTION CAPTIONED AS:
"MOTION TO VACATE SENTENCE" AND REQUEST-
ING FOR A "NEW SENTENCING HEARING" TO BE
CONDUCTED, WITH A MOTION TO APPOINT COUNSEL.
    PETITIONER/MARCUM HAD ALSO SENT
LETTERS TO MS. GUTMANN AND TO MS.
STACY WALL, ASKING THEM TO CORRECT THE
INJUSTICE. MARCUM STATED THAT UNLESS
THE ILLEGALITIES WERE CORRECTED, THAT
HE WOULD FILE A CIVIL ACTION, INCLUD-
ING A 42 U.S.C. § 1983 CIVIL RIGHTS
VIOLATIONS. PLAINTIFF/MARCUM HAD ALSO
SENT LETTERS TO THE PUBLIC DEFENDER.
    AS OF TODAY'S DATE, NO RESPONSE OR
REPLY HAS BEEN MADE IN WRITING BY
JUDGE GUTMANN NOR BY STACY WALL.

(11)

## ARGUMENT

BEGININ WITH OHIO CRIMINAL RULE 44(B), PROVIDES THAT: " ... WHERE A DEFENDANT CHARGED WITH A PETTY OFFENSE IS UN-ABLE TO OBTAIN COUNSEL, THE COURT MAY ASSIGN COUNSEL TO REPRESENT HIM. WHEN A DEFENDANT CHARGED WITH A PETTY OFFENSE IS UNABLE TO OBTAIN COUNSEL, NO SENTENCE OF CONFINEMENT MAY BE IMPOSED UPON HIM, UNLESS AFTER BEING FULLY ADVISED BY THE COURT, HE KNOW-INGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVES ASSIGNMENT OF COUNSEL."

IN THE PRESENT CASE, PETITIONER-MARCUM DOES NOT DISPUTE THE FACT THAT HE DID, IN DEED, "WAIVE" HIS RIGHT TO COUNSEL AT THE "CHANGE OF PLEA HEARING" STAGE OF THE PROCEEDINGS. HOWEVER, MARCUM NEVER "WAIVED" HIS RIGHT TO COUNSEL FOR PURPOSES OF THE "SENTENCING PHASE" OF THE PROCEEDINGS. IN FACT, NOT ONCE HAD HONORABLE JUDGE GUTMANN ADVISED OR NOTIFIED MARCUM THAT THE COURT COULD IMPOSE SENTENCING (WITHOUT COUNSEL PRESENT) IMMEDIATELY FOL-LOWING THE WAIVER AND ENTRY OF THE PLEA OF NO CONTEST.

(12)

THUS, MARCUM NEVER KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY WAIVE HIS RIGHT TO COUNSEL DURING THE "SENTENCING" PHASE OF THE PROCEEDING. THUS, PURSUANT TO OHIO CRIMINAL RULE 44(B), THE TRIAL COURT IN THIS CASE WAS STATUTORILY PROHIBITED FROM IMPOSING A "SENTENCE OF CONFINEMENT." MARCUM WAS NEVER "FULLY ADVISED" OF THE WAIVER. A WAIVER OF CONSTITUTIONAL RIGHTS CANNOT BE UPHELD BASED ON A "SILENT RECORD." SEE: JOHNSON V. ZERBST, (1938) 304 U.S. 458

IN A LONG LINE OF CASES THAT INCLUDE POWELL VS. ALABAMA, (1932) 287 U.S. 45 AND GIDEON VS. WAINWRIGHT, (1963), 372 U.S. 335, THE U.S. SUPREME COURT HAS RECOGNIZED THAT THE SIXTH AMEND- MENT RIGHT TO COUNSEL EXISTS, AND IS NEEDE, IN ORDER TO PROTECT THE FUNDAMENTAL RIGHT TO A FAIR TRIAL. THE CONSTITUTION GUARANTEES A FAIR TRIAL THROUGH THE DUE PROCESS CLAUSES, BUT IT DEFINES THE BASIC ELEMENTS OF A FAIR TRIAL LARGELY THROUGH THE SEVERAL PROVISIONS OF THE SIXTH AMENDMENT, INCLUDING THE COUNSEL CLAUSE:

(13)

" ... IN ALL CRIMINAL PROSECUTIONS, THE ACCUSED SHALL ENJOY THE RIGHT TO A SPEEDY AND PUBLIC TRIAL., TO BE INFORMED OF THE NATURE AND CAUSE OF THE ACCUSATION., TO BE CONFRONTED WITH THE WITNESSES AGAINST HIM., TO HAVE COMPULSORY PROCESS FOR OBTAINING WITNESSES IN HIS FAVOR, AND TO HAVE THE ASSISTANCE OF COUNSEL FOR HIS DEFENCE." (AMENDMENT VI, U.S. CONSTITUTION).

THE SUPREME COURT HAS RULED THAT THE RIGHT TO COUNSEL PLAYS A CRUCIAL ROLE IN THE ADVERSARIAL SYSTEM EMBODIED IN THE SIXTH AMENDMENT, SINCE ACCESS TO COUNSEL'S SKILL AND KNOWLEDGE IS NECESSARY TO ACCORD DEFENDANTS THE "AMPLE OPPORTUNITY TO MEET THE CASE OF THE PROSECUTION" TO WHICH THEY ARE ENTITLED. SEE: ADAMS VS. UNITED STATES EX REL. McCANN, (1942) 317 U.S. 269, AT: 275, 276., POWELL VS. ALABAMA, (1932), 287 U.S. AT: 68-69. BECAUSE OF THE VITAL IMPORTANCE OF COUNSEL'S ASSISTANCE, THE SUPREME COURT HELD THAT A PERSON ACCUSED OF A FEDERAL OR STATE CRIME HAS THE RIGHT TO HAVE COUNSEL APPOINTED IF RETAINED

(14)

COUNSEL CANNOT BE OBTAINED. SEE:
ARGERSINGER VS. HAMLIN, (1972),
407 U.S. 25., SEE, ALSO GIDEON VS.
WAINWRIGHT, (1963), 372 U.S. 335.

THE SIXTH AMENDMENT RECOGNIZES
THE RIGHT TO THE ASSISTANCE OF
COUNSEL BECAUSE IT ENVISIONS COUNSEL
PLAYING A ROLE THAT IS CRITICAL
TO THE ABILITY OF THE ADVERSARIAL
SYSTEM TO PRODUCE JUST RESULTS.
AN ACCUSED IS ENTITLED TO BE
ASSISTED BY AN ATTORNEY, WHETHER
RETAINED OR APPOINTED, WHO PLAYS
THE ROLE NECESSARY TO ENSURE THAT
THE CRIMINAL PROCEEDINGS ARE FAIR,
AND "THAT THE DEFENDANT HAS THE
ASSISTANCE NECESSARY TO JUSTIFY
RELIANCE ON THE OUTCOME OF THE
PROCEEDING." STRICKLAND VS. WASHINGTON,
(1984), 466 U.S. 668, AT: 692.

THE SUPREME COURT HAS ALSO RULED
THAT, IN CERTAIN SIXTH AMENDMENT
CONTEXTS, "PREJUDICE IS PRESUMED."
THE COURT HELD THAT ACTUAL OR
CONSTRUCTIVE DENIAL OF COUNSEL
IS LEGALLY PRESUMED TO RESULT IN
PREJUDICE. THE SUPREME COURT ALSO
HELD THAT THE VARIOUS KINDS OF

(15)

STATE INTERFERENCE WITH COUNSEL'S ASSIS-
TANCE. SEE: UNITED STATES VS. CRONIC,
(1984), 466 U.S. AT: 659 N. 25.

THE SUPREME COURT RULED "PREJUDICE"
IN THESE CIRCUMSTANCES ARE SO LIKELY
THAT CASE-BY-CASE INQUIRY INTO PRE-
JUDICE IS NOT WORTH THE COST. SEE:
CRONIC, 466 U.S. AT: 658. MOREOVER, SUCH
CIRCUMSTANCES INVOLVE IMPAIRMENTS OF
THE SIXTH AMENDMENT RIGHT THAT ARE
EASY TO IDENTIFY AND, FOR THAT REASON
AND BECAUSE THE PROSECUTION IS
DIRECTLY RESPONSIBLE, EASY FOR THE
GOVERNMENT TO PREVENT."

IN CRONIC, THE SUPREME COURT RULED
THAT ALL CRIMINAL DEFENDANTS' ARE
ENTITLED TO BE REPRESENTED BY
COUNSEL DURING " ...ALL CRITICAL
STAGES OF THE PROCEEDINGS." THE
SUPREME COURT HAS ALREADY DETERMINED
THAT, WHERE THERE IS POSSIBILITY
OF LOSS OF LIBERTY DURING THE
"SENTENCING PHASE," AMOUNTS TO
BEING A "CRITICAL STAGE" OF THE
PROCEEDINGS TO WHICH THE RIGHT
TO COUNSEL ATTACHES. SEE CRONIC,
STRICKLAND, AND ARGERSINGER VS.
HAMLIN, (1972), 407 U.S. 25.

(16)

IN CHAPMAN VS. CALIFORNIA, (1967),
386 U.S. 18, AT: 23, N. 8, THE SUPREME
COURT ACKNOWLEDGED THAT CERTAIN CON-
STITUTIONAL RIGHTS ARE "SO BASIC TO
A FAIR TRIAL THAT THEIR INFRACTION
CAN NEVER BE TREATED AS HARMLESS
ERROR." AMOUNG THESE RIGHTS IS THE
RIGHT TO THE ASSISTANCE OF COUNSEL.
Id. AT: 23, N. 8

IN THE PRESENT CASE, PETITIONER
TED MARCUM ADMITS THAT HE WAIVED HIS
RIGHT TO COUNSEL'S ASSISTANCE DURING
THE CHANGE OF PLEA HEARING., HOWEVER,
BY NO MEANS HAD MARCUM WAIVED HIS
RIGHT TO THE ASSISTANCE OF COUNSEL
DURING THE SENTENCING PHASE. NEITHER
THE COURT NOR THE PROSECUTOR HAD
ADVISED NOR INFORM MARCUM THAT
THE COURT COULD IMPOSE SENTENCING
IMMEDIATELY FOLLOWING THE CHANGE
OF PLEA HEARING. NOR HAD THE
COURT ASKED MARCUM IF HE WAS
"WAIVING" HIS RIGHT TO COUNSEL'S
ASSISTANCE FOR PURPOSES OF SEN-
TENCING. AS NOTED ABOVE, OHIO
CRIMINAL RULE 44(B) MANDATES THAT
WHEN A DEFENDANT WAIVES HIS
RIGHT TO COUNSEL, SUCH A DEFENDANT

(17)

MUST BE "FULLY ADVISED OF BY THE COURT" OF ALL THE RIGHTS HE IS WAIVING. THE RULE ALSO STATES THAT, IN THE ABSENCE OF A KNOWING, INTELLIGENT, AND VOLUNTARY WAIVER, THAT " ... NO SENTENCE OF CONFINEMENT MAY BE IMPOSED UPON HIM." (SEE: OHIO CRIM. RULE 44(B)).

ACCORDINGLY, PETITIONER/MARCUM PRAYS FOR AN ORDER GRANTING HIM HABEAS CORPUS RELIEF. PETITIONER STATES THAT HIS 6TH AND 14TH AMENDMENT RIGHT TO HAVE COUN- SEL'S ASSISTANCE AT SENTENCING. MARCUM FURTHER STATES THAT HIS RIGHTS AS GUARANTEED BY ART. I, SEC. 2, 10, AND 16 OF THE OHIO CONSTITUTION, LIKEWISE, WAS VIOLATED, AS WELL OHIO CRIMINAL RULE 44(B).

OHIO REV. CODE SEC. 2725.01 STATES: " WHOEVER IS UNLAWFULLY RESTRAINED OF HIS LIBERTY, OR ENTITLED TO THE CUSTODY OF ANOTHER, OF WHICH CUSTODY SUCH PERSON IS UNLAWFULLY DEPRIVED, MAY PROSECUTE A WRIT OF HABEAS CORPUS, TO INQUIRE INTO THE CAUSE OF SUCH IMPRISONMENT, RESTRAINT, OR DEPRIVATION."

(18)

" THE WRIT OF HABEAS CORPUS MAY
BE GRANTED BY THE SUPREME COURT,
COURT OF APPEALS, COURT OF COMMON
PLEAS, PROBATE COURT, OR BY A JUDGE
OF ANY SUCH COURT. " O.R.C. § 2725.02.

APPLICATION FOR THE WRIT OF
HABEAS CORPUS SHALL BE BY PETITION,
SIGNED AND VERIFIED BY THE PARTY
FOR WHOSE RELIEF IT IS INTENDED.
THAT SUCH PERSON UNLAWFULLY RE-
STRAINED. THE NAME OF THE PARTY
HAVING CUSTODY OF THE PRISONER.
THE PLACE WHERE SUCH PRISONER IS
CONFINED OR RESTRAINED. AND THE
PETITION MUST HAVE "A COPY OF THE
COMMITMENT" PAPER, AND THE PETI-
TION MUST DEMONSTRATE THAT THE
" ... IMPRISONMENT IS WITHOUT
LEGAL AUTHORITY, SUCH FACT MUST
APPEAR." (SEE: O.R.C. § 2725.04(A)-(D).)

ATTACHED HERETO THIS PETITION,
IS A FILED-STAMPED COPY OF THE
ACTUAL "COMMITMENT PAPER" FOR CASE
NO. 2017 CRA 3729 (ATTEMPTED B§E).
THUS, THE FOREGOING PETITION FOR
WRIT OF HABEAS CORPUS STATES A
VALID CAUSE OF ACTION. MOREOVER
PETITIONER STATES THAT SHERIFF

(19)

DAVE DUCHACK IS THE CUSTODIAN OVER PETITIONER TED MARCUM. PETITIONER FURTHER STATES THAT HE IS UNLAWFULLY RESTRAINED OF HIS LIBERTY, AND IS CONFINED AT THE MIAMI COUNTY JAIL LOCATED AT 2042 NORTH COUNTY RD. 25-A, TROY, OHIO 45373.

IN ADDITION TO THE ABOVE, PETITIONER STATES THAT IT IS ILLEGAL, UNETHICAL, AND UNCONSTITUTIONAL FOR PROSECUTORS' TO APPROACHED CRIMINALLY ACCUSED DEFENDANTS, TO EITHER INCOURAGE OR ADVISE THEM TO "WAIVE" THEIR RIGHT TO COUNSEL.

PETITIONER TED MARCUM HAD ALREADY BEEN ARRAIGNED ON OCT. 6TH, 2017. HE FILLED OUT PAPERS SEEKING APPOINTMENT OF COUNSEL, IN PART, ON GROUNDS BECAUSE THE MIAMI COUNTY JAIL DOES NOT PROVIDE "FREE" PHONE CALLS, WHICH PREVENTED THIS PETITIONER COMPLETELY FROM BEING ABLE TO CONTACT ANYONE FOR PURPOSES OF CON- TACTING AN ATTORNEY OR A BONDSMAN.

THUS, AT THE SCHEDULED ARRAIGNMENT, MARCUM FILLED-OUT THE NECESSARY PAPER- WORK SEEKING APPOINTMENT OF COUNSEL. THE FOLLOWING WEEK, MARCUM WAS INFORMED THAT NO COUNSEL HADN'T BEEN APPOINTED DUE TO LACK OF DILIGENCE ON THE PART OF GOVERNMENT.

(20)

IT IS HORNBOOK LAW OF CRIMINAL PROCEDURE, THAT ONCE A DEFENDANT HAS BEEN ARRAIGNED, WHOM HAS REQUESTED TO HAVE COUNSEL APPOINTED, THAT NO LAW ENFORCEMENT OFFICER, WHICH INCLUDES THE PROSECUTOR, IS ALLOWED TO APPROACHED THE DEFENDANT DIRECTLY, WITHOUT COUNSEL'S PRESENCE, AND THEN DISCUSS ANY MATTER ASSOCIATED WITH THAT CASE.

ONLY THE DEFENDANT HIMSELF MAY INITIATE COMMUNICATION WITH LAW ENFORCEMENT, ONCE THE RIGHT TO COUNSEL HAS BEEN DEMANDED BY THE ACCUSED. SEE: MIRANDA VS. ARIZONA, (1966), 384 U.S. 436, AT: 467

IT IS ALSO A CONFLICT OF INTEREST, AS WELL AS STRUCTURAL ERROR, FOR ANY PROSECUTOR TO GIVE "LEGAL ADVISE" TO A CRIMINAL DEFENDANT THAT MAY INCOURAGE A DEFENDANT TO FORFIET ANY OF HIS CONSTITUTIONAL RIGHTS, ESPECIALLY IN THE CONTEXT OF "WAIVING" HIS OR HER RIGHT TO BE REPRESENTED BY COUNSEL. SEE, e.g., STRICKLAND VS. WASHINGTON (1984), 466 U.S. 668 AT: 692, 104 S.CT. 2052, AT: 2067.

(21)

FOR INSTANCE, THE SUPREME COURT STATED
IN STRICKLAND: "...THIS COURT HELD THAT PRE-
JUDICE IS PRESUMED WHEN COUNSEL IS BUR-
DENED BY AN ACTUAL CONFLICT OF INTEREST.
IN THOSE CIRCUMSTANCES, COUNSEL BREACHES
THE DUTY OF LOYALTY, PERHAPS THE MOST
BASIC OF COUNSEL'S DUTIES. MOREOVER, IT
IS DIFFICULT TO MEASURE THE PRECISE
EFFECT ON THE DEFENSE OF REPRESENTATION
CORRUPTED BY CONFLICTING INTERESTS.
GIVEN THE OBLIGATION OF COUNSEL TO AVOID
CONFLICTS OF INTERESTS AND THE ABILITY
OF TRIAL COURTS TO MAKE EARLY INQUIRY
IN CERTAIN SITUATIONS LIKELY TO GIVE
RISE TO CONFLICTS, IT IS REASONABLE FOR
THE CRIMINAL JUSTICE SYSTEM TO MAIN-
TAIN A FAIRLY RIGID RULE OF PRESUMED
PREJUDICE FOR CONFLICTS OF INTEREST."
466 U.S. AT: 692, 104 S.CT. AT: 2067.
        THUS, IN GEDERS VS. UNITED STATES,
(1976), 425 U.S. 80, THE SUPREME COURT
RULED THAT THE GOVERNMENT VIOLATED THE
DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE
WHEN IT INTERFERS IN CERTAIN WAYS WITH
THE ABILITY OF COUNSEL TO MAKE
INDEPENDENT DECISIONS ABOUT HOW TO
CONDUCT THE DEFENSE. (i.e., BAR ON ATTOR-
NEY-CONSULTATION DURING OVERNIGHT RECESS).

(22)

SEE, ALSO, FERGUSON VS. GEORGIA, (1961),
365 U.S. 570, 593-596 (BAR ON DIRECT EX-
AMINATION OF DEFENDANT DEPRIVED DEFEND-
ANT OF HIS RIGHT TO BE REPRESENTED BY
COUNSEL)., SEE, ALSO, BROOKS VS. TENNESSEE,
(1972), 406 U.S. 605, 612-613 (REQUIREMENT
THAT DEFENDANT BE FIRST DEFENSE WIT-
NESS).

THESE SUPREME COURT CASES MAKE CLEAR
THAT THE POLICY PRACTICES OF THE GOVERN-
MENT CAN "INTERFER" WITH THE OVERALL
REPRESENTATION PROVIDED TO A DEFENDANT,
AND THUS, CAN DEPRIVE THE DEFENDANT OF
HIS RIGHT TO BE REPRESENTED BY COUNSEL
ALTOGETHER.

IN THESE CASES, THE SUPREME COURT
STRUCK DOWN THE CONVICTIONS. AS NOTED
IN CRONIC, "ACTUAL OR CONSTRUCTIVE DENIAL
OF THE ASSISTANCE OF COUNSEL ALTOGETHER
IS LEGALLY PRESUMED TO RESULT IN PREJUDICE."
Id. 466 U.S. AT: 659, N. 25.

AND IN CUYLER VS. SULLIVAN, (1980),
446 U.S. 648, AT: 345-350, THE SUPREME
COURT HELD THAT "PREJUDICE IS PRESUMED"
WHEN COUNSEL IS BURDENED BY AN ACTUAL
CONFLICT OF INTEREST. SEE, ALSO,
STRICKLAND, 466 U.S. AT: 692.

(23)

TURNING NOW TO THE MERITS OF THIS CLAIM. ASSNT. MIAMI COUNTY PROSECUTOR, MS. STACY WALL, AS WELL AS JUDGE GUTMANN, COMMITTED JUDICIAL MISCONDUCT, AS WELL AS PROSECUTORIAL MISCONDUCT, BY ACTING IN CAHOOTS TOGETHER IN INCOURAGING THE PETITIONER TO "WAIVE" HIS RIGHT TO COUNSEL. THERE'S AN OBVIOUS "CONFLICT OF INTEREST" THAT RISES TO THE LEVEL OF "STRUCTUAL ERROR." THE PROSECUTOR IS BARRED FROM GIVING LEGAL ADVISE TO A DEFENDANT THAT HAS REQUESTED TO BE APPOINTED COUN- SEL. THE JUDGE IN THIS CASE "RUBBER- STAMPED" THE PROSECUTOR'S INVOLVEMENT. THUS, THE JUDGE WAS NOT ACTING IN A "DETACHED-NEUTRAUL" MANNER, THAT THE DUE PROCESS CLAUSES OF BOTH THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION DEMANDS IN CRIMINAL CASES. PETITIONER/MARCUM REQUESTED FOR COUNSEL TO BE APPOINTED BY FILLING OUT THE PAPERWORK AT THE OCT. 6TH, 2017, SCHEDULED ARRAIGNMENT HEARING. A WHOLE WEEK LATER, COUNSEL WAS STILL NOT APPOINTED. THEN, FOLLOWING THE 180 DAY SENTENCE IMPOSED BY MS. GUTMANN, MARCUM ASKED, ON RECORD, FOR THE COURT TO APPOINT COUNSEL TO MARCUM

(24)

FOR PURPOSES OF FILING "A TIMELY-NOTICE-OF-APPEAL." MS GUTMANN "DENIED" THAT REQUEST, WHICH IS MORE EVIDENCE SHOWING JUDICIAL BIAS AND IMPROPRIETY TOWARDS MARCUM'S RIGHTS IN OBTAINING COUNSEL.

WHEREFORE, PETITIONER TED MARCUM RESPECTFULLY ASKS THIS HONORABLE COURT TO ISSUE THE WRIT OF HABEAS CORPUS DISCHARGING PETITIONER/MARCUM FROM ANY FURTHER UNLAWFUL RESTRAINT.

THE NEXT MATTER PERTAINS TO THE POLICY PRACTICE OCCURING AT BOTH MIAMI COUNTY JAIL FACILITIES PERTAINING TO NOT PROVIDING A "FREE" PHONE CALL, TO ARRESTEES' UPON THEIR ARREST, FOR PURPOSES OF CALLING AN ATTORNEY, OR A BAIL BONDSMAN, OR TO CONTACT A "RELATIVE" OR "OTHER PERSON" FOR PURPOSES OF ALLOWING THEM TO CONTACT AN ATTORNEY OR A BONDSMAN.

IN THIS PARTICULAR ARGUMENT, MARCUM ASKS THE COURT TO GRANT TWO WRITS: (1) HABEAS CORPUS RELIEF., AND (2) MANDAMUS RELIEF, DIRECTING SHERIFF DAVE DUCHAK, THAT HE MUST PROVIDE INMATES WITH A "FREE" PHONE CALL FOR PURPOSES OF CONTACTING AN ATTORNEY OR A BONDSMAN. PLAINTIFF/MARCUM ALSO SEEKS DECLARATORY JUDGMENT AND INJUNCTION RELIEF.

(25)

ACCORDING TO OHIO REV. CODE $ 2935.20 AND 2935.14, BOTH OF THESE TWO STATUTES PRO- VIDE, IN RELEVANT PART, THAT, WHEN A PERSON WHO IS CHARGED WITH A FELONY SHALL " BE SPEEDILY PERMITTED FACILITIES TO COMMUNICATE WITH AN ATTORNEY OF HIS OWN CHOICE, OR TO COMMUNICATE WITH AT LEAST ONE RELATIVE OR OTHER PERSON FOR THE PURPOSE OF OBTAINING COUNSEL."

THE TROY CITY POLICE DEPT., AS WELL AS THE MIAMI COUNTY JAIL, DOES NOT OFFER OR PROVIDE A "FREE" PHONE CALL UPON THAT PERSON'S ARREST.

THE SYSTEM SET UP AT THE MIAMI COUNTY JAIL, ONLY ALLOW PHONE CALLS TO BE MADE BY BILLING THE PHONE CHARGES TO EITHER A "CREDIT CARD" OR TO A "DEBIT CARD." THE COST FOR ONE CALL TO ANOTHER PERSON'S CREDIT OR DEBIT CARD COST $15.00. THERE ARE NO "COLLECT" CALLS TO ANY PERSON'S "LAND LINE" PHONE BILL. THE BILLING ARRANGEMENT TO ANOTHER PERSON, IS BY "CREDIT CARD" OR "DEBIT CARD" ONLY.

INMATES ARE ALLOWED TO PURCHASE A $10.00 PHONE CARD (TAXES NOT INCLUDED) BY PURCHASING THE PHONE CARD OFF INMATE COMMISSARY. THE

(26)

FORMS TO ORDER COMMISSARY ITIMS (INCLUDING
PRE-PAID PHONE CARDS) ARE PROVIDED TO BE
FILLED OUT ON MONDAY. THE INMATE WILL
RECEIVE HIS PRE-PAID PHONE CARD ON
FRIDAY. THUS, THE VERY POSSIBLE SOONEST
THAT AN INMATE IS ABLE TO OBTAIN A
PREPAID PHONE CARD, IS FIVE (5) DAYS.
HOWEVER, LETS SAY THAT AN INMATE WAS
ARRESTED ON TUESDAY... THE SOONEST WAIT-
ING PERIOD TO OBTAIN A PREPAID PHONE
CALL WOULD BE THIRTEEN (13) DAYS. EACH
PREPAID PHONE CARD IS ONLY TWENTY (20)
MINUTES LONG. THE CARD CAN ONLY BE
USED TWICE, i.e., 15-MIN FOR A FIRST
CALL, AND 5-MIN FOR A SECOND CALL.

NOW, LETS SAY A PERSON WAS ARRESTED,
HAS NO MONEY ON HIM, OR SAY THAT HE OR
SHE IS INDIGENT. WELL, TOUGH LUCK FOR
THEM, THEY ARE NOT ABLE TO PURCHASE A
PHONE CARD AT ALL. THE JAIL WILL NOT
OFFER OR PROVIDE THEM WITH A "FREE"
PHONE CALL, NOT EVEN TO CALL A LAWYER
OR A BONDSMAN. AND IF SUCH A PERSON
KNOWS NO ONE THAT HAS A "CREDIT CARD"
OR "DEBIT CARD" FOR PURPOSES OF MAKING
A CALL BILLED TO THEM, WELL, THEN,
THAT INMATE WON'T BE MAKING ANY
CALLS AT ALL.

(27)

PETITIONER/MARCUM HAS NOT BEEN ABLE TO CALL ANYONE. AT THE TIME OF MARCUM'S ARREST, MARCUM DID NOT HAVE ANY MONEY. MARCUM HAS TRIED TO CALL BOTH A BONDS- MAN, AS WELL AS AN ATTORNEY, BUT NONE OF THEM "ACCEPTED" TO PAY FOR THE CALL MARCUM MADE TO THEM. MARCUM DOES NOT KNOW ANYONE WHO HAS A "CREDIT CARD" OR "DEBIT CARD" TO MAKE A PHONE CALL THEM. MOST PEOPLE WOULD NOT BE WILLING TO USE THEIR DEBIT CARD OR CREDIT CARD TO PAY TO ACCEPT PHONE CALLS, ESPECIALLY FROM PHONE CALLS MADE BY PRISON INMATES, ON GROUNDS THAT PEOPLE MAY THINK IT IS "SCAM" TO OBTAIN THEIR CARD NUMBER.

TURNING TO OHIO LAW. ACCORDING TO OHIO REV. CODE SEC. 2935.14, PROVIDES IN RELEVANT PART, ESPECIALLY THE SECOND AND EIGHTH SENTENCE OF THE PARAGRAPH STATES: " ... IF THE PERSON ARRESTED IS UNABLE TO OFFER SUFFICIENT BAIL, OR, IF THE OFFENSE CHARGED BE A FELONY, HE SHALL, PRIOR TO BEING CONFINED ... BE PERMITTED FACILITIES TO COMMUNI- CATE WITH AN ATTORNEY AT LAW OF HIS CHOICE, OR TO COMMUNICATE WITH AT LEAST ONE RELATIVE OR OTHER PERSON FOR THE PURPOSE OF OBTAINING COUNSEL ...

(28)

HE SHALL NOT THEREAFTER BE CONFINED OR
REMOVED FROM THE SITUS OF INITIAL
DETENTION UNTIL SUCH ATTORNEY HAS HAD
REASONABLE OPPORTUNITY TO CONFER WITH
HIM PRIVATELY, OR OTHER TO ARRANGE
BAIL."

MARCUM POINTS OUT, FIRST, THAT THE
WORDING OF THE STATUTE CLEARLY STATES
THAT MARCUM WAS ENTITLED TO A PHONE
CALL "FACILITIES" ... " PRIOR TO CONFINE-
MENT." MARCUM WAS NEVER GIVEN ANY
"FACILITIES" TO MAKE A PHONE CALL PRIOR
TO "BEING CONFINED" IN HIS HOUSING
UNIT AT THE JAIL. THIS IS STRONG
EVIDENCE SUGGESTING THAT "FACILITIES"
TO MAKE A PHONE CALL, MUST BE PROVIDED
IN AREA (SUCH AS AT BOOKING) PRIOR TO
LOCKING A PERSON IN A CELL.

THE NEXT ISSUE IS THE WORDING OF
THE STATUTE STATES " REASONABLE OPPOR-
TUNITY TO CONFER." MARCUM POINTS OUT
THAT THE CURRENT POLICY PRACTICE AT
THE MIAMI COUNTY JAIL DOES NOT OFFER
OR PROVIDE "REASONABLE OPPORTUNITIES"
TO CONTACT AN ATTORNEY, OR ANYONE
FOR THAT MATTER. THE NEXT ISSUE
THAT MARCUM POINTS OUT NOW IS THE
WORDING OF O.R.C. SEC. 2935. 20, WHICH

(29)

STATES IN RELEVANT PART, THAT, WHEN A PERSON IS CHARGED WITH A FELONY, HE OR SHE SHALL " ... BE SPEEDILY PERMITTED FACILITIES TO COMMUNICATE WITH AN ATTORNEY OF HIS OWN CHOICE, OR TO COMMUNICATE WITH AT LEAST ONE RELA- TIVE OR OTHER PERSON FOR THE PURPOSE OF OBTAINING COUNSEL ... "

AS NOTED ABOVE, IT TAKES ANYWHERE FROM 5 TO 13 DAYS TO OBTAIN A PRE- PAID PHONE CARD. THUS, THERE ARE NO " ... SPEEDILY PERMITTED FACILITIES TO COMMUNICATE WITH AN ATTORNEY OF HIS CHOICE."

STATE LAW OF OHIO SAYS THAT A VIOLA- TION OF O.R.C. § 2935.20, IMPOSES A FINE UP TO $500.00 AND UP TO 30 DAYS IN JAIL "OR BOTH" UPON ANY LAW ENFORCEMENT OFFICER THAT DENIES ANY "ARRESTEE" IMMEDIATE ACCESS TO PHONE FACILITIES TO CONTACT AN ATTORNEY. IN FACT THE STATUTE STATES THAT: " ... NO OFFICER OR OTHER AGENT OF THIS STATE SHALL PREVENT, ATTEMPT TO PREVENT, OR ADVISE SUCH PERSON AGAINST THE COMMUNICATION." MARCUM HIMSELF HAS BEEN COMPLETELY "PREVENTED" FROM OBTAINING "COUNSEL OF HIS CHOICE,"

(30)

SIMPLY SO BASED ON THE CURRENT POLICY PRACTICE ENFORCED BY SHERIFF DAVE DUCHACK. MARCUM STATES THAT THE U.S. SUPREME COURT HAS RULED THAT IT IS "STRUCTURAL ERROR" IN VIOLATION OF THE 6TH AMENDMENT, WHEN THE GOVERNMENT DEPRIVES A DEFENDANT FROM OBTAINING COUNSEL "OF HIS CHOICE."

MARCUM FURTHER STATES THAT HE HAS FILED GRIEVANCES, COMPLAINING THAT THE CURRENT POLICY PRACTICES OCCURING AT THE MIAMI COUNTY JAIL, DENYING TO PROVIDE "FREE" PHONE CALL FACILITIES, VIOLATES BOTH STATE AND FEDERAL LAWS. THOSE GRIEVANCES WERE "DENIED" BY MIAMI COUNTY JAIL OFFICIALS.

MARCUM POINTS OUT THAT BOTH SECTIONS OF OHIO REV. CODE SEC. 2935.14 AND 2935.20, ARE STATUTES THAT WERE WRITTEN INTO LAW DATING BACK TO THE YEAR OF 1960. NO AMENDMENT HAS BEEN MADE BY THE OHIO LEGISLATURE IN REGUARDS TO EITHER STATUTE.

WHEREFORE, MARCUM STATES THAT HE HAS BEEN DENIED HIS RIGHT TO COUNSEL FROM BEGINNING TO END. MARCUM STATES THE POLICY PRACTICE AT MIAMI COUNTY, DENYING INMATES A "FREE" PHONE CALL, IS VIOLATIVE OF THE ABOVE TWO OHIO REV.

(31)

CODE STATUTES, AND ALSO VIOLATES ART I,
SEC. 2 10 AND 16 OF THE OHIO CONSTITU-
TION, AND ALSO VIOLATES THE 5TH, 6TH,
AND 14TH AMENDMENTS TO THE UNITED
STATES CONSTITUTION.

PETITIONER STATES THAT HE HAS SUF-
FERED "ACTUAL PREJUDICE" ARISING OUT
OF SHERIFF DUCHACK'S PHONE POLICY
RESTRICTION, WHICH PREVENTED MARCUM
FROM OBTAINING COUNSEL OF HIS CHOICE.

PETITIONER STATES THAT HE IS
ENTITLED TO HEABES CORPUS RELIEF ON
GROUNDS OF "ACTUAL" OR "CONSTRUCTIVE"
DENIAL TO OBTAIN COUNSEL OF HIS CHOICE.
MARCUM FURTHER STATES THAT HE IS EN-
TITLED TO RELIEF BY WAY OF MANDAMUS
ORDERING SHERIFF DUCHACK TO FURNISH
MARCUM WITH A "FREE" PHONE CALL, FOR
PURPOSES OF ALLOWING MARCUM TO CALL AN
ATTORNEY OF HIS CHOICE, AS WELL AS TO
CALL A BONDSMAN, OR "OTHER PERSON" AS
AUTHORIZED BY THE OHIO REV. CODE
STATUTE, FOR PURPOSES OF OBTAINING
COUNSEL OF HIS CHOICE. PETITIONER
MARCUM STATES THAT HE DOES NOT HAVE
ANY OTHER AVAILABLE ADEQUATE REMEDY
REMAINING IN THE ORDINARY COURSE
OF LAW TO OBTAIN THE RELIEF REQUESTED.

(32)

FINALLY, PETITIONER/MARCUM STATES THAT HE IS ENTITLED TO MANDAMUS RELIEF AGAINST JUDGE ELIZABETH GUTMANN ON GROUNDS THAT MARCUM FILED A PRO SE MOTION TO "VACATE" ON CONSTITUTIONAL AND STATUTORY GROUNDS, CHALLENGING HIS 180 DAY SENTENCE IN CASE NO. 2017 CRB 3729, ASSERTING A "JURIS-DICTIONAL" DEFECT. SPECIFICALLY, MARCUM'S MOTION TO "VACATE" ASSERTED THAT MS. GUTMANN DID NOT HAVE "JURISDICTION" TO IMPOSE THE 180 DAY SENTENCE WHEN MARCUM DID NOT "WAIVE" HIS RIGHT TO COUNSEL AT THE "SENTENCING" PHASE OF THE PROCEEDINGS. OHIO CRIM. RULE 44(B) STATES THAT MS. GUTMANN WAS POWERLESS FROM IMPROSING A TERM OF INCARCERATION WHEN COUNSEL WAS NEVER WAIVED AT THE STAGE OF SENTENCING.

ACCORDING TO O.R.C. § 2725.05 SAYS THAT A WRIT OF HABEAS CORPUS WILL BE GRAN-TED WHEN A COURT DID NOT HAVE "JURISDIC-TION" TO ISSUE THE PROCESS OR ORDER. MOREOVER, A WRIT OF MANDAMUS WILL ISSUE TO COMPEL AN INFERIOR COURT TO PROCEED TO JUDGMENT. THUS, A WRIT OF MANDAMUS WILL ISSUE COMPELLING HONOR-ABLE JUDGE GUTMANN TO RULE ON MARCUM'S PENDING MOTION(S). ALTERNATIVELY, THE COURT MAY GRANT THE WRIT OF HABEAS CORPUS.

(33)

PLAINTIFF/PETITIONER, TED MARCUM, STATES
THAT HE IS ALSO ENTITLED TO RELIEF BY
WAY OF DECLARATORY JUDGMENT AND FOR
INJUNCTION RELIEF AS WELL AS MONETARY
DAMAGES PURSUANT TO 42 U.S.C. § 1983.


JUDGE GUTMANN AND STACY WALL
        PLAINTIFF/PETITIONER STATES
THAT HE IS NOT SUING HONORABLE JUDGE
GUTMANN OR PROSECUTOR STACY WALL FOR
ANY MONETARY DAMAGES. IT IS WELL
SETTLED THAT JUDGES AND PROSECUTOR'S
ARE PROTECTED BY IMMUNITY LAWS. SEE:
PIERSON VS. RAY, (1967), 386 U.S. 547, AT:
553-554., AND SEE: IMBLER VS. PACHTMAN,
(1976), 424 U.S. 409. HOWEVER, IT IS
CLEARLY ESTABLISHED THAT JUDGES AND
PROSECUTORS HAVE NO ABSOLUTE IMMUNITY
FROM SUIT IN A STATE COURT FROM
BEING SUED FOR "MANDAMUS" OR
"INJUNCTION" RELIEF. THUS, PLAIN-
TIFF TED MARCUM SEEKS AN ORDER
BY THE COURT OF COMMON PLEAS SEEK-
ING A PERMANENT INJUNCTION
AGAINST ASSNT PROSECUTOR STACY WALL
PREVENTING HER FROM DIRECTLY
APPROACHING CRIMINAL DEFENDANTS'
INCOURAGING DEFENDANTS TO WAIVE

(34)

THEIR RIGHT TO COUNSEL. PLAINTIFF
FURTHER SEEKS AN INJUNCTION AGAINST
STACY WALL BASED ON THE HOLDING IN
MIRANDA VS. ARIZONA, (1966), 384 U.S. 436.
    IN MIRANDA, THE COURT HELD THAT
LAW ENFORCEMENT OFFICIALS ARE PRO-
HIBITED FROM DIRECTLY APPROACHING
CRIMINALLY ACCUSED OFFENDERS IN AN
ATTEMPT TO ELICIT AN INCRIMINAT-
ING STATEMENT, ONCE THAT DEFENDANT
HAS ALREADY INVOKED HIS RIGHT TO
COUNSEL.
    IT APPEARS THAT THE MIAMI COUNTY
PROSECUTOR'S OFFICE HAS A POLICY OR
CUSTOM PRACTICE OF DIRECTLY APPROACH-
ING OFFENDERS TO ACCEPT PLEA DEALS
EVEN WHERE COUNSEL WAS INVOKED BUT
NONE WERE PROVIDED. THIS VIOLATES
MIRANDA. IT ENCOURAGES DEFENDERS
TO "INCRIMINATE" THEMSELVES BY
"WAIVING" THEIR RIGHT TO COUNSEL
AND TO ENTER A GUILTY OR NO CONTEST
PLEA. IT IS THUS UNCONSTITUTIONAL
FOR PROSECUTOR'S TO DO THIS CUSTOM.
IT VIOLATES PRINCIPLES UNDER THE
HOLDING IN MIRANDA. ACCORDINGLY,
AN ORDER FOR INJUNCTION RELIEF
IS REQUESTED TO ISSUE DIRECTED

(35)

TOWARDS THE MIAMI COUNTY PROSECUTOR'S OFFICE TO IMMEDIATELY CEASE THIS CUSTOM OR POLICY PRACTICE.

PLAINTIFF/PETITIONER TED MARCUM INVOKED HIS RIGHT TO COURT APPOINTED COUNSEL AT THE ARRAIGNMENT STAGE OF THE CRIMINAL PROCEEDINGS BY FILLING OUT THE COURT APPOINTED COUNSEL. HOW-EVER, A WEEK LATER, THERE WAS STILL NO COUNSEL APPOINTED. MS. WALL TOOK AVANTAGE OF THIS BY APPROACHING THIS DEFENDANT DIRECTLY AND INCOURAGING MARCUM TO WAIVE HIS RIGHT TO COUNSEL. IT WAS VERY UNETHICAL AND CREATED A CONFLICT OF INTEREST. THE PROSECUTOR IS AN AGENT OF THE STATE, AND THUS, PROHIBITED BY LAW FROM COACHING OR ADVISING OFFENDERS OF LEGAL ADVICE. THIS PRACTICE MUST CEASE.

LIKEWISE, AN ORDER FOR INJUNCTION IS REQUESTED AGAINST JUDGE GUTMANN ORDERING HER TO CEASE BEING A CO-PARTY TO THE PROSECUTOR'S UNETHICAL TACTICS. AN ORDER FOR DECLARATORY JUDG-MENT IS REQUESTED TO ISSUE DECLAR-ING THE POLICY OR CUSTOM PRACTICE BY THE ASSNT PROSECUTOR IS UNCONSTITU-TIONAL AND UNETHICAL.

(36)

THE POLICY PRACTICE AT BOTH MIAMI COUNTY JAIL FACILITIES THAT RESTRICTS INMATES FROM BEING PROVIDED A FREE PHONE CALL UPON THEIR ARREST, VIOLATES THE 6TH AND 14TH AMENDMENT RIGHTS AS GUARANTEED BY THE UNITED STATES CON-STITUTION, AS WELL VIOLATES ART I, SEC. 10 AND 16 OF THE OHIO CONSTITUTION., AND VIOLATES OHIO REV. CODE SEC. 2935.14 2935.20 BECAUSE IT PREVENTS ARRESTEES' MEANINGFUL AND SPEEDILY OPPORTUNITIES TO OBTAIN COUNSEL OF THEIR CHOSE, AND TO BE ABLE TO SECURE A BONDSMAN TO POST THEIR BAIL. THUS SHERIFF DAVE DUCHAK IS SUED IN HIS INVIDUAL AND OFFICIAL CAPACITIES FOR BOTH MONATARY RELIEF, INJUNCTION RELIEF, AND FOR DECLARATORY JUDGMENT.

THE SUPREME COURT NOTED IN ITS LANDMARK DECISION OF OWEN VS. CITY-OF INDEPENDENCE, (1980), 445 U.S. 622, THAT A MUNICIPALITY HAS NO IMMUNITY FROM LIABILITY UNDER THE CIVIL RIGHTS ACT (42 U.S.C. § 1983) FLOWING FROM ITS CONSTITUTIONAL VIOLATIONS AND MAY NOT ASSERT THE GOOD FAITH OF ITS OFFICERS AS A DEFENSE TO SUCH LIABILITY.

(37)

THE CIVIL RIGHTS STATUTE FOUND AT:
42 U.S.C. § 1983 STATES THAT: "EVERY PER-
SON WHO, UNDER COLOR OF ANY STATUTE,
ORDINANCE, REGULATION, CUSTOM, OR USAGE,
OF ANY STATE OR TERRITORY, SUBJECTS, OR
CAUSES TO BE SUBJECTED, ANY CITIZEN OF
THE UNITED STATES OR OTHER PERSON WITHIN
THE JURISDICTION THEREOF TO THE DEPRIVA-
TION OF ANY RIGHTS, PRIVILEGES, OR
IMMUNITIES SECURED BY THE CONSTITU
TION AND LAWS, SHALL BE LIABLE TO
THE PARTY INJURED IN AN ACTION AT
LAW, SUIT IN EQUITY, OR OTHER PROPER
PROCEEDING FOR REDRESS."

APPLYING THIS STATUTE, THE SUPREME
COURT STATED THAT "§1983 WAS INTENDED
NOT ONLY TO PROVIDE COMPENSATION TO
THE VICTIMS OF PAST ABUSES, BUT TO
SERVE AS A DETERRENT AGAINST FUTURE
CONSTITUTIONAL DEPRIVATIONS, AS WELL."
OWEN, 445 U.S. AT: 651.

"THE KNOWLEDGE THAT A MUNICI-
PALITY WILL BE LIABLE FOR ALL OF
ITS INJURIOUS CONDUCT, WHETHER COM-
MITTED IN GOOD FAITH OR NOT, SHOULD
CREATE AN INCENTIVE FOR OFFICIALS
WHO MAY HARBOR DOUBTS ABOUT THE
LAWFULNESS OF THEIR INTENDED

(38)

ACTIONS TO ERR ON THE SIDE OF PROTECT-
ING CITIZENS CONSTITUTIONAL RIGHTS.
FURTHERMORE, THE THREAT THAT DAMAGES
MIGHT BE LEVIED AGAINST THE CITY
MAY ENCOURAGE THOSE IN A POLICYMAKING
POSITION TO INSTITUTE INTERNAL RULES
AND PROGRAMS DESIGNED TO MINIMIZE
THE LIKELIHOOD OF UNINTENTIONAL
INFRINGEMENTS ON CONSTITUTIONAL
RIGHTS." OWEN, 445 U.S. AT: 651-652
        MOREOVER, AN OFFICER'S RELIANCE
ON "GOOD FAITH IMMUNITY" IS MISPLACED
WHEN ANY "REASONABLE OFFICER" EITHER
KNEW, OR SHOULD HAVE KNOWN, THAT HIS
CONDUCT WAS ILLEGAL UNDER THE CON-
STITUTION. SEE, e.g., HARLOW v. FITZ-
GERALD, (1982), 457 U.S. 800
        IN THE PRESENT CASE, OHIO REV.
CODE SEC. 2935.14 AND 2935.20, BOTH,
WHEN READ IN PART MATERIA, CLEARLY
STATED THAT TELEPHONE FACILITIES
MUST BE "SPEEDILY" PROVIDED SO AS
TO ENABLE AN ARRESTED PERSON A BONA-
FIDE OPPORTUNITY TO THE ARRESTED
PERSON TO MAKE A PHONE CALL, FOR
PURPOSES OF CALLING AN ATTORNEY
OF "HIS CHOICE." THE PHONE SYSTEM
AT BOTH MIAMI COUNTY JAIL

(39)

FACILITIES DO NOT PROVIDE "REASONABLE" COMMUNICATION DEVICES FOR PURPOSES OF MAKING A "SPEEDILY" PHONE CALL TO AN ATTORNEY OR TO A BONDSMAN.

AS NOTED ABOVE ON PAGE NO. 26, IT TAKES A MINIMUM OF 5 DAYS UP TO 13 DAYS JUST TO BUY A PREPAID PHONE CARD OFF THE INMATE COMMISSARY AND TO RECEIVE IT. THE PHONE CARD ITSELF COST $10.00 PLUS 7% TAX = $10.70. MARCUM HAS NOT HAD SUFFICIENT FUNDS IN HIS INMATE ACCOUNT TO PURCHASE A "PREPAID" PHONE CARD. THUS MARCUM HAS NOT BEEN PROVIDED ANY PHONE "FACILI-TIES" TO MAKE A PHONE CALL TO AN ATTORNEY OR TO A BONDSMAN.

MARCUM ALSO DOES NOT KNOW ANY-ONE WHO WOULD ACCEPT AND PAY FOR A PHONE CALL WITH USAGE OF THEIR DEBIT OR CREDIT CARD.

IN ALL ACTUALITY, FOR THE MAJORITY OF INMATES CONFINED AT MIAMI COUNTY JAIL FACILITIES, ARE NEVER ABLE TO MAKE A PHONE CALL. THE COST FOR A DEBIT OR CREDIT CARD CALL COST $15.00 DOLLARS FOR ONE SINGLE 20 MINUTE CARD.

(40)

ACCORDINGLY, PLAINTIFF/PETITIONER, TED MARCUM STATES THAT SHERIFF DAVE DUCHAK, HAS PURPOSELY, WITH DELIBERATE INDIFFERENCE, AND KNOWINGLY, HAS VIOLATED PLAINTIFF/MARCUM'S 6TH AND 14TH AMENDMENT RIGHTS TO OBTAIN COUNSEL OF HIS CHOICE, CAUSING "ACTUAL PREJUDICE" AGAINST MARCUM, AND THUS PREVENTING MARCUM FROM BEING ABLE TO OBTAIN COUNSEL.

PLAINTIFF/MARCUM STATES THAT HIS CRIMINAL CASE WAS COMPROMISED AS A DIRECT RESULT STEMMING FROM SHERIFF DAVE DUCHAK'S POLICY, THAT PREVENTED MARCUM FROM BEING ABLE TO MAKE A "SPEEDILY" PHONE CALL TO AN ATTORNEY.

MARCUM STATES THAT, IF IT HADN'T BEEN FOR SHERIFF'S DAVE DUCHAK'S NO "FREE" PHONE CALL POLICY, COUPLED WITH THE FACT THE COST FOR A SINGLE "COLLECT" CALL TO AN ATTORNEY OR A BAILS BONDSMAN BEING $15.00, PREVENTED MARCUM FROM OBTAINING COUNSEL TO REPRESENT HIM WITHIN THAT TEN DAY TIME PERIOD FOR HIS SCHEDULED ARRAIGNMENT HEARING, AND PRELIMINARY HEARING. MARCUM STATES THAT HE WOULD HAVE NEVER ENTERED A PLEA OF NO CONTEST IF HE WOULD HAVE BEEN REPRESENTED BY COUNSEL. BY ALL MEANS,

(41)

MARCUM NEVER STOLE ANYTHING. THE ONLY CRIME MARCUM COMMITTED WAS ONLY A MERE TRESPASSING OFFENSE, NOT A "B&E." NOR ATTEMPTED B&E. IF MARCUM HAD BEEN ABLE TO CALL AN ATTORNEY TO REPRESENT HIM AT HIS SCHEDULED PRE-LIMINARY HEARING, COUNSEL COULD HAVE HAD THE CHARGE REDUCED DOWN TO A (M.4) TRESPASSING OFFENSE.

ADDITIONALLY, DAVE DUCHAK IS GUILTY OF VIOLATING OHIO REV. CODE § 2935.14 AND § 2935.20. THESE TWO STATUTES IMPOSE CRIMINAL SANCTIONS UPON ANY OFFICER FOR VIOLATING THEM. THE STATUTES IMPOSE A FINE RANGING FOR $100.00 DOLLARS UP TO $500.00, AND A JAIL SENTENCE UP TO "30 DAYS," FOR EACH VIOLATION. THAT MEANS THE OVERAL PENALTY BASED ON THE NUMBER OF INMATES BEING VIOLATED AT BOTH MIAMI COUNTY JAIL FACILITIES FOR THE PRECEEDING TIME PERIOD SINCE SHERIFF DUCHAK TOOK OFFICE, ADDS UP TO HUNDREDS OF THOUSANDS OF DOLLARS IN FINES, AND MANY YEARS OF JAIL TIME.

(42)

" ... A MUNICIPALITY HAS NO 'DISCRETION'
TO VIOLATE THE FEDERAL CONSTITUTION., ITS
DICTATES ARE ABSOLUTE AND IMPERATIVE.
AND WHEN A COURT PASSES JUDGMENT ON THE
MUNICIPALITY'S CONDUCT IN A § 1983 ACTION,
IT DOES NOT SEEK TO SECOND-GUESS THE
"REASONABLENESS" OF THE CITY'S DECISION
NOR TO INTERFERE WITH THE LOCAL
GOVERNMENT'S RESOLUTION OF COMPETING
POLICY CONSIDERATIONS. RATHER, IT LOOKS
ONLY TO WHETHER THE MUNICIPALITY HAS
CONFORMED TO THE REQUIREMENTS OF
THE FEDERAL CONSTITUTION AND STATUTES."
OWEN, SUPRA, 445 U.S. AT: 649.

THE CENTRAL AIM OF THE CIVIL
RIGHTS ACT WAS TO PROVIDE PROTECTION
TO THOSE PERSONS WRONGED BY THE
"[M]ISUSE OF POWER, POSSESSED BY VIR-
TUE OF STATE LAW AND MADE POSSIBLE
ONLY BECAUSE THE WRONGDOER IS CLOTHED
WITH THE AUTHORITY OF STATE LAW."
MONROE VS. PAPE, (1961) 365 U.S. 167, AT:
184 (QUOTING UNITED STATES VS. CLASSIC,
(1941), 313 U.S. 299, 326).

SHERIFF DUCHAK IS AN OFFICER ACTING
UNDER COLOR OF STATE LAW AND HAS
VIOLATED BOTH STATE AND FEDERAL
LAW. THUS BASED ON SHERIFF'S DUCHAK'S

(43)

KNOWING AND PURPOSEFUL VIOLATIONS, DIS-
ENTITLES THE SHERIFF TO CLAIM ANY
SHIELD OF IMMUNITY.

BY CREATING AN EXPRESS FEDERAL
REMEDY, CONGRESS SOUGHT TO "ENFORCE PRO-
VISIONS OF THE FOURTEENTH AMENDMENT AGAINST
THOSE WHO CARRY A BADGE OF AUTHORITY OF A
STATE AND REPRESENT IT IN SOME CAPACITY,
WHETHER THEY ACT IN ACCORDANCE WITH
THEIR AUTHORITY OR MISUSE IT." MONROE,
SUPRA, 365 U.S. AT 172

HOW UNIQUELY AMISS IT WOULD BE,
THEREFORE, IF THE GOVERNMENT ITSELF---
"THE SOCIAL ORGAN TO WHICH ALL IN OUR
SOCIETY LOOK FOR THE PROMOTION OF LIBERTY,
JUSTICE, FAIR AND EQUAL TREATMENT,
AND THE SETTING OF WORTHY NORMS AND
GOALS FOR SOCIAL CONDUCT" WERE PER-
MITTED TO DISAVOW LIABILITY FOR THE
INJURY IT HAS BEGOTTEN. SEE, e.g.,
ADICKES VS. KRESS & CO, (1970), 398 U.S.
144, AT: 190 (OPINION BY BRENNAN, JUDGE).
THUS, A DAMAGES REMEDY AGAINST
THE OFFENDING PARTY IS A VITAL
COMPONENT OF ANY SCHEME FOR VINDICAT-
ING CHERISHED CONSTITUTIONAL
GUARANTEES, AND THE IMPORTANCE OF
ASSURING ITS EFFICACY IS ONLY

(44)

ACCENTUATED WHEN THE WRONGDOER IS THE INSTITUTION THAT HAS BEEN ESTABLISHED TO PROTECT THE VERY RIGHTS IT HAS TRANSGRESSED.

ACCORDINGLY, PLAINTIFF/PETITIONER TED MARCUM, SEEKS DAMAGES IN THE AMOUNT OF ONE HUNDRED THOUSAND DOLLARS IN COMPENSATORY DAMAGES AND TEN THOUSAND DOLLARS IN PUNITIVE DAMAGES AGAINST SHERIFF DAVE DUCHAK, FOR VIOLATING MARCUM'S 6TH AND 14TH AMENDMENT RIGHTS TO COUNSEL.

MARCUM ALSO SEEKS AN ORDER FOR INJUNCTIVE RELIEF ORDERING SHERIFF DAVE DUCHAK TO IMMEDIATELY CEASE HIS POLICY PRACTICE RESTRICTING A "FREE" PHONE CALL, BY ORDERING HIM TO IMMEDIATELY ALLOW ALL INMATES FROM THIS DAY FOREWARD, AN OPPORTUNITY TO MAKE A "FREE" PHONE CALL UPON THEIR ARREST, FOR PURPOSES OF CALLING AN ATTORNEY OR A BONDSMAN, OR ANY PER-SON FOR PURPOSES OF CONTACTING AN ATTORNEY OR BONDSMAN.

MARCUM ALSO REQUESTS A DECLARA-TORY JUDGMENT DECLARING THAT THE PRE-SENT PHONE CALL "FACILITIES," VIOLATE BOTH FEDERAL AND STATE LAWS.

(45)

MARCUM REQUESTS THIS, EVEN FOR THE
SAKE OF ARGUEMENT, AND ASSUMING THAT THE
TWO STATE STATUTES FOUND AT O.R.C. SEC.
2935.14 AND 2935.20 FAIL MANDATE A
"FREE" PHONE CALL (BECAUSE THE STATUTES
THEMSELVES ONLY REQUIRE FOR PHONE
"FACILITIES" TO BE PROVIDED, AND MEN-
TIONS NOTHING ABOUT SUCH CALLS BEING
"FREE"). THUS, EVEN FOR THE SAKE OF
ARGUEMENT, THERE ARE OTHER FACTORS
THAT THIS COURT MUST CONSIDER WHEN
DECIDING WHETHER TO IMPOSE INJUNCTION
RELIEF AND ISSUING A DECLARATORY JUDG-
MENT BASED ON "FREE" PHONE CALL BEING
DECIDED. THOSE REASONS ARE AS FOLLOWS:
    (1) THE WORDING OF O.R.C. 2935.14 PROVIDES,
IN RELEVANT PARTS, THAT: "... IF THE PERSON
ARRESTED IS UNABLE TO OFFER SUFFICIENT
BAIL OR, IF THE OFFENSE CHARGED BE A
FELONY, HE SHALL, PRIOR TO BEING CONFINED
OR REMOVED FROM THE COUNTY OF ARREST, AS
THE CASE MAY BE, BE SPEEDILY PERMITTED
FACILITIES TO COMMUNICATE WITH AN
ATTORNEY AT LAW OF HIS OWN CHOICE,
OR TO COMMUNICATE WITH AT LEAST ONE
RELATIVE OR OTHER PERSON FOR THE PUR-
POSE OF OBTAINING COUNSEL.... [H]E
SHALL NOT THEREAFTER BE CONFINED

(46)

OR REMOVED FROM THE COUNTY OR FROM THE SITUS OF HIS INITIAL DETENTION UNTIL SUCH ATTORNEY HAS HAD REASONABLE OPPOR- TUNITY TO CONFER WITH HIM PRIVATELY, OR OTHER PERSON TO ARRANGE BAIL, UNDER SUCH SECURITY MEASURES AS MAY BE NECESSARY UNDER THE CIRCUMSTANCES."

(2) 2935.20 PROVIDES, IN RELEVANT PART, THAT: "... AFTER THE ARREST, DE- TENTION, OR ANY OTHER TAKING INTO CUSTODY OF A PERSON, WITH OR WITHOUT A WARRANT, SUCH PERSON BE PERMITTED FORTHWITH FACILITIES TO COMMUNICATE WITH AN ATTORNEY AT LAW OF HIS CHOICE WHO IS ENTITLED TO PRACTICE IN THE COURTS OF THIS STATE, OR TO COMMUNI- CATE WITH ANY OTHER PERSON OF HIS CHOICE FOR THE PURPOSE OF OBTAINING COUNSEL. SUCH COMMUNICATION MAY BE MADE BY A REASONABLE NUMBER OF TELEPHONE CALLS OR IN ANY OTHER REASONABLE MANNER. SUCH PERSON SHALL HAVE A RIGHT TO BE VISITED IMMEDI- ATELY BY ANY ATTORNEY AT LAW SO OBTAINED WHO IS ENTITLED TO PRAC- TICE IN THE COURTS OF THIS STATE, AND TO CONSULT WITH HIM PRIVATELY."

(47)

(3) CERTAIN KEY WORDS IN BOTH STATUTES STATE: "SPEEDILY PERMITTED" OR "PERMITTED FORTHWITH," MEANS IMMEDIATE ACCESS WITHOUT DELAY.

(4) CERTAIN KEY WORDS IN BOTH STATUTES STATE: "FACILITIES TO COMMUNI-CATE WITH AN ATTORNEY AT LAW OF HIS CHOICE," MEANS THE ABILITY TO ACTUALLY BE ABLE TO COMMUNICATE WITH THAT ATTORNEY, (NOT JUST "FACILITIES" TO TRY TO COMMUNICATE). THE "FACILITIES" TO COMMUNICATE, MEAN THAT THE "COMMUNICA TIONS" MUST BE ACHIEVED UNINHINDERED.

(5) "HE (ARRESTEE) SHALL NOT THEREAFTER BE CONFINED OR REMOVED FROM THE COUNTY OR FROM THE SITUS OF HIS INITIAL DETENTION UNTIL SUCH ATTORNEY HAS HAD REASONABLE OPPORTUNITY TO CONFER WITH HIM PRIVATELY." MEANS "REASONABLE OPPORTUNITY" TO DISCUSS THE LEGAL ISSUES OF THE CASE, AND FURTHER MEANS THAT THE DEFENDANT SHALL NOT BE "CONFINED" UNTIL BOTH THE ARRESTEE AND COUNSEL HAS BEEN ABLE TO MEET IN PRIVATE.

(48)

(6) WHEN A COURT CONSTRUES THE TRUE LEGISLATIVE "INTENT" OF THE LEGISLATURE, A COURT MUST TAKE INTO CONSIDERATION THE ERA WHEN THAT STATUTE BECAME EFFECTIVE AND MUST ALSO CONSIDER THE MODERN PRACTICES OF THAT ERA. FOR EXAMPLE, BOTH OHIO REVISED CODE STATUTES FOUND AT O.R.C. $ 2935.14 AND $ 2935.20, WERE WRITTEN INTO LAW BY THE OHIO LEGISLATURE IN THE YEAR OF 1960. THE STATUTES HAVE NEVER BEEN AMENDED. THE ACTUAL WORDING OF THOSE TWO STATUTES REMAIN THE SAME AS ORIGIN-ALLY WRITTEN. THUS, "IF" "COLLECT" CALL-BILLING WAS NOT AVAILABLE IN THE YEAR OF 1960, IT WOULD NOT HAVE BEEN NECESSARY FOR THE OHIO LEGISLATURE TO USE WORDS SUCH AS "FREE" PHONE CALLS OR "FREE FACILITIES" BECAUSE ALL CALLS DURING THAT ERA WERE ALREADY PHONE CALLS MADE DIRECTLY. SECONDLY, MOST, IF NOT ALL CALLS, WERE MADE BY THE "BOOKING AREA" PHONES. THIS IS WHERE THE HOLLYWOOD MOVIES TRADITIONALLY GOT THE NO-TION "ONE FREE PHONE CALL" MEAN-ING YOU HAD ONLY ONE CHANCE.

(49)

(7) THE 5TH AND 6TH AMENDMENTS BOTH
OF WHICH BECAME BINDING UPON THE
STATES OF THE UNION DURING THE MID-
1960S ERA. SEE: GIDEON VS. WAINWRIGHT,
(1963), 372 U.S. 335., AND MIRANDA VS.
ARIZONA, (1966), 384 U.S. 436. BOTH OF
THESE TWO CASE REVULUTIONALIZED THE
RIGHT TO COUNSEL AND THE RIGHT TO
REMAIN SILENT. THE HOLDING IN
MIRANDA ITSELF SUGGESTS THAT THE
DEFENDANT OR THE "ACCUSED" PERSON
BEING "QUESTIONED," HAS THE RIGHT
TO "CONSULT" WITH COUNSEL. THUS,
APPLYING THESE TWO CASES PLAINTIFF-
MARCUM STATES THAT HE HAS 5TH AND
6TH AMENDMENT RIGHT (AS WELL AS
14TH AMENDMENT RIGHT UNDER THE
"EQUAL PROTECTION" CLAUSE BASED ON
MARCUM'S "INDIGENT" STATUS, AND A
RIGHT TO "DUE PROCESS OF LAW") TO
MAKE A "FREE" PHONE CALL TO AN
ATTORNEY OF MARCUM'S CHOICE.
PUBLIC POLICY CONSIDERATIONS LIKEWISE,
REQUIRE THAT AN ACCUSED ARRESTED PER-
SON HAS A RIGHT TO A "FREE" PHONE
CALL. WHEREFORE PLAINTIFF/MARCUM
PRAYS FOR AN ORDER GRANTING INJUNC-
TION RELIEF AND DECLARATORY JUDGMENT.

(50)

THE POLICY AS WRITTEN IN THE INMATE HANDBOOK AT THE MIAMI COUNTY JAIL ON PAGE 5, CHAPTER 3(a), VIOLATES THE 5TH, 6TH AND 14TH AMENDMENT RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION. THE POLICY PRACTICE IS PART OF AN ILLEGAL CONSPIRACY MADE BETWEEN THE MIAMI COUNTY SHERIFF'S DEPT., AND THAT OF THE MIAMI COUNTY PUBLIC DEFENDER'S OFFICE. THE POLICY PROHIBITS ALL INMATES FROM "CALLING" THE PUBLIC DEFENDER'S OFFICE UNLESS THE PUBLIC DEFENDANT REQUESTS FOR SUCH INMATE TO CALL THE OFFICE.

ON PAGE NO. 5, CHAPTER 3(a) OF THE MIAMI COUNTY JAIL INMATE HANDBOOK STATES AND SAYS: "NO CALL WILL BE MADE TO THE PUBLIC DEFENDER'S OFFICE BY AN INMATE UNLESS REQUESTED BY THE PUBLIC DEFENDER."

MARCUM STATES THAT MR. STEVE LAYMAN IS A PUBLIC DEFENDER FOR MIAMI COUNTY OHIO. IT WAS MR. LAYMAN WHO WAS PRESENT AT MARCUM'S INITIAL "ARRAIGNMENT" HEARING HELD ON OCTOBER 6TH, 2017. MARCUM SPOKE WITH MR. LAYMAN BUT ONLY BRIEFLY

(51)

AT THE ARRAIGNMENT HEARING. MR. LAYMAN
EXPLAINED THAT HE DIDN'T HAVE TIME
TO GET INTO THE DETAILS OR MERITS
OF MARCUM'S CASE. MARCUM ASKED MR.
LAYMAN WHAT THE PHONE NUMBER WAS
TO CALL THE PUBLIC DEFENDER? MR.
LAYMAN STATED THAT NO PHONE CALLS
WERE ALLOWED FROM INMATES. TO CALL
THE OFFICE OF THE PUBLIC DEFENDER.
MR. LAYMAN GAVE MARCUM THE COURT
APPOINTED PAPER TO OBTAIN COURT
APPOINTMENT OF COUNSEL.

THEREAFTER, A FEW DAYS LATER,
MARCUM TRIED TO MAKE A COLLECT CALL
TO THE PUBLIC DEFENDER. THE CALL WAS
NOT ACCEPTED. SOMETIME AFTER THAT,
MARCUM WAS READING THE INMATE
HANDBOOK AND DISCOVERED ON PAGE
5, CHAPTER 3(a), THAT NO INMATES
ARE ALLOWED TO CALL THE PUBLIC
DEFENDER, UNLESS THE PUBLIC DEFEN-
DER REQUESTS FOR THE INMATE TO
CALL THEM UP. (SEE: EXHIBIT (D)).

MARCUM FILED A GRIEVANCE AT THE
JAIL COMPLAINING THAT THIS POLICY-
PRACTICE, AS WRITTEN IN THE INMATE
HANDBOOK IS "ILLEGAL." AS OF TODAY'S
DATE, THE STAFF AT MIAMI COUNTY JAIL

(52)

HAS NOT REPLIED OR RESPONDED TO THAT PAR-
TICULAR GRIEVANCE. MARCUM RECENTLY SENT
A REQUEST TO LT. MARION REMINDING HIM TO
RESPOND TO ALL GRIEVANCES THAT HAVE NOT
BEEN ADDRESSED YET., AND MARCUM ASKED
TO RECEIVE "PHOTO COPIES" OF ALL HIS
GRIEVANCES AND ALL WRITTEN DISPOSITIONS
MADE IN RESPONSE TO THOSE GRIEVANCES
TO BE PROVIDED BACK TO MARCUM SO THAT
THIS PLAINTIFF MAY SUBMIT THEM TO THIS
COURT AS REQUIRED BY O.R.C. § 2969.26(A)(1)
AND (2). AS OF TODAY'S DATE (NOV. 14, 2017)
MARCUM HAS NOT RECEIVED PHOTO COPIES BACK.

PLAINTIFF/MARCUM STATES THAT THE
SHERIFF'S DEPT AND THE PUBLIC DEFENDER
OFFICE HAVE ACTED IN PURPOSEFUL CON-
SPIRACY TO VIOLATE PLAINTIFF/MARCUM'S
5TH, 6TH, AND 14TH AMENDMENTS RIGHTS AS
GUARANTED THE CONSTITUTION BASED ON THE
CURRENT POLICY PRACTICE AS WRITTEN IN
THE INMATE HANDBOOK, THAT PROHIBITS ALL
INMATES AT THE MIAMI COUNTY JAIL(S), FROM
BEING ALLOWED TO CALL THE MIAMI
COUNTY PUBLIC DEFENDER'S OFFICE.

PLAINTIFF/MARCUM STATES THAT MR.
STEVE LAYMAN WAS ALREADY WELL AWARE
OF THE NO PHONE CALL POLICY. THUS,
HE IS PART OF THE CONSPIRACY. PLAINTIFF-

(53)

MARCUM DOES NOT SUE THE PUBLIC DEFENDER IN HIS "INDIVIDUAL CAPACITY," BUT DOES INDEED SUE THE MIAMI COUNTY PUBLIC DEFENDER IN HIS "OFFICIAL CAPACITY." MARCUM HOWEVER DOES SHERIFF DAVE DUCHAK IN BOTH: HIS "INDIVIDUAL" CAPACITY, AS WELL AS IN HIS "OFFICIAL" CAPACITY, BASED ON THE FACT THAT THE POLICY IN QUESTION IS WRITTEN IN THE INMATE HANDBOOK, (SEE EXHIBIT (D)), AND IS FURTHER EVIDENCE PROVING THAT SHERIFF DAVE DUCHAK IS PURSUING ALL POSSIBLE MEANS TO PREVENT ALL INMATES, ESPECIALLY "INDIGENT" INMATES, FROM COMMUNICATING WITH THE MIAMI COUNTY PUBLIC DEFENDER'S OFFICE, IN VIOLATION OF THE 5TH, 6TH, AND 14TH AMENDMENTS.

PLAINTIFF/MARCUM STATES THAT MR. DAVE DUCHAK HAS PURPOSELY AND DELIBERATELY, WITH INTENTION TO CAUSE PAIN, INJURY, AND SUFFER-ING, WITH MALICE, WHILE ACTING UNDER COLOR OF STATE LAW, VIOLATED PLAINTIFF/MARCUM'S RIGHTS AS GUARANTEED BY THE 5TH, 6TH AND 14TH AMENDMENT RIGHTS TO COUNSEL, BY ENFORCING A POLICY PRACTICE THAT PRE-VENTS ALL MIAMI COUNTY JAIL INMATES FROM CALLING THE PUBLIC DEFENDER'S OFFICE "UNLESS REQUESTED" BY THE PUBLIC DEFENDER TO CALL. (SEE: EXHIBIT (D)).

(54)

AS NOTED BY THE UNITED STATES
SUPREME COURT IN UNITED STATES VS.
CRONIC, "ACTUAL OR CONSTRUCTIVE DENIAL
OF COUNSEL ALTOGETHER IS LEGALLY PRE-
SUMMED TO RESULT IN PREJUDICE." SEE:
CRONIC, 466 U.S. AT: 659 AT: N. 25.

THE RIGHT TO COUNSEL FOR A PRE-
LIMINARY HEARING IS A "CRITICAL
STAGE." SEE: ARGERSINGER VS. HAMLIN,
(1972), 407 U.S. 25. THUS, AS A RESULT
OF THE POLICY PRACTICE RESTRICTING
ALL INMATE PHONE CALLS TO THE OHIO
PUBLIC DEFENDER, PREVENTED MARCUM FROM
SECURING COUNSEL TO REPRESENT HIM AT
THE PRELIMINARY HEARING STAGE OF THE
PROCEEDINGS. IT ALSO PREVENTED MARCUM
FROM OBTAINING LEGAL ADVICE.

MARCUM FURTHER CLAIMS THAT A CLAIM
OF "ACTUAL CONFLICT OF INTEREST EXIST"
WHEN BOTH THE SHERIFF DEPT AS WELL
AS THE MIAMI COUNTY PUBLIC DEFENDERS
OFFICE, HAVE A MUTUAL POLICY AGREEMENT
THAT PREVENTS INMATES IN THE MIAMI
COUNTY JAIL FROM BEING ALLOWED TO
CALL THE PUBLIC DEFENDERS OFFICE.
PLAINTIFF/MARCUM STATES THAT HE SEEKS
ONE HUNDRED THOUSAND DOLLARS IN
COMPENSATORY DAMAGES FROM THE MIAMI

(55)

COUNTY SHERIFF'S DEPT AND FROM THE MIAMI COUNTY PUBLIC DEFENDER'S OFFICE FOR BEING SUED IN THEIR "OFFICIAL CAPACITIES."

MARCUM ALSO SEEKS TEN THOUSAND DOLLARS "PUNITIVE DAMAGES" AGAINST SHERIFF DAVE DUCHAK SUING THE SHERIFF IN HIS "INDIVIDUAL CAPACITY" FOR INTENTIONAL CONSTITUTIONAL RIGHTS VIOLATIONS.

THE SUPREME COURT RULED IN ITS LANDMARK DECISION MONELL VS. NEW YORK-CITY DEPT. OF SOCIAL SERVICES, (1978), 436 U.S. 658, AT: 694 THAT "A LOCAL GOVERNMENT MAY NOT BE SUED UNDER § 1983 FOR AN INJURY INFLICTED SOLELY BY ITS EMPLOYEES OR AGENTS. INSTEAD, IT IS WHEN EXECUTION OF A GOVERNMENT'S POLICY OR CUSTOM, WHETHER MADE BY ITS LAWMAKERS OR BY THOSE WHOSE EDICTS OR ACTS MAY FAIRLY BE SAID TO REPRESENT OFFICIAL POLICY, INFLICTS THE INJURY THAT THE GOVERNMENT AS AN ENTITY IS RESPONSIBLE UNDER § 1983." Id. AT: 694.

IN THE PRESENT CASE, SHERIFF DAVE DUCHAK IS THE HEAD EXECUTIVE OF THE MIAMI COUNTY JAIL. OHIO REVISED CODE SEC. 341.01 STATES THAT IT IS THE SHERIFF WHO HAVE CHARGE OF THE JAIL. AS SUCH, THE SHERIFF IS THE OFFICIAL

(56)

"POLICY MAKER" FOR THE MIAMI COUNTY
JAIL. THE INMATE HANDBOOK REPRESENTS
THE "POLICIES" AND "INMATE RULES OF
CONDUCT" THAT ALL INMATES ARE GOVERNED
BY AT THE MIAMI COUNTY JAIL. SEE, e.g.,
OHIO ADMINISTRATIVE CODE SEC. 5120:1-8-01-
(A)(10) (REQUIRING ALL "FULL SERVICE AND
MINIMUM SECURITY JAILS" IN OHIO
"... [S]HALL DEVELOP, IMPLEMENT, MAIN-
TAIN, AND UPDATE AS NECESSARY A SET
OF GENERALLY APPLICABLE INMATE RULES.
THE RULES SHALL BE ACCESSIBLE TO ALL
INMATES AND SHALL PROVIDE INFORMA-
TION REGARDING CONFINEMENT INCLUD-
ING SLEEPING HOURS, MEALS, MAIL, WORK
ASSIGNMENTS, TELEPHONE ACCESS, VISITA-
TION, CORRESPONDENCE, MEDICAL CARE,
HYGIENE, LAUNDRY, RECREATION, PROGRAMS,
RULES OF CONDUCT, DISCIPLINARY PROCEDURES
AND GRIEVANCE PROCEDURES. A STAFF MEMBER
OR TRANSLATOR SHALL ASSIST THE INMATE IN
UNDERSTANDING THE INMATE RULES IF THERE
IS A LITERACY OR LANGUAGE PROBLEM. THE
JAIL SHALL MAINTAIN SIGNED ACKNOWLEDGE-
MENTS FROM EACH INMATE ACKNOWLEDGING
THAT THE RULES WERE RECEIVED BY
AND/OR EXPLAINED TO THEM.")

(57)

ACCORDINGLY, PLAINTIFF/MARCUM STATES THAT THE MIAMI COUNTY INMATE HANDBOOK REPRESENTS THE POLICIES AND PROCEDURE PRACTICES AT BOTH MIAMI COUNTY JAILS.

AS SUCH, THESE POLICY PRACTICES BINDS ALL LOCAL MUNICIPAL COUNTY POLICYMAKERS TOGETHER " WHOSE EDICTS OR ACTS MAY FAIRLY BE SAID TO REPRE-SENT OFFICIAL POLICY," MONELL, 436 U.S. AT: 694, AND THUS, SUBJECTS THE MUNICIPALICITY AS A WHOLE FOR COMPENSATION LIABILITY IN THE AMOUNT OF ONE HUNDRED THOUSAND DOLLARS COMPENSATORY DAMAGES, AND FUR-THER SUBJECTS THE SHERIFF FOR THE ADDITIONAL SANCTION OF TEN THOUSAND DOLLARS PUNITIVE DAMAGES IN HIS INDIVIDUAL CAPACITY.

PLAINTIFF/MARCUM ALSO SEEKS INJUNCTION RELIEF AND DECLARATORY JUDGMENT DECLARING THAT THE POLICY AS WRITTEN IN THE INMATE HANDBOOK IS ILLEGAL AND VIOLATES THE 5TH, 6TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION. MARCUM ALSO SEEKS AN ORDER FOR PERMANENT INJUNCTION PRE-VENTING THE SHERIFF AND THE PUBLIC DEFENDER FROM RESTRICTING PHONE CALLS.

(58)

MARCUM'S FIRST, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS AS GUARANTEED BY THE UNITED STATES CONSTITUTION WAS VIOLATED BY THE POLICY PRACTICES AND/OR CUSTOMS OCCURING AT THE MIAMI COUNTY JAIL, WHEN THE JAIL OFFICIALS FAIL TO ANSWER THE INMATE GRIEVANCE PROCEDURE WHICH HAS PREVENTED PLAINTIFF/MARCUM FROM FILING HIS LAW SUIT SOONER, AND THUS VIOLATED MARCUM'S RIGHTS TO "PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES," AND TO HAVING ACCESS TO THE COURTS. PLAINTIFF MARCUM FURTHER STATES THAT HE HAS HAD LIMITED ACCESS TO THE COUNTY LAW LIBRARY RESOURCES, WHICH HAS LIMITED MARCUM'S ABILITY TO PRESENT AND DRAFT HIS CLAIMS MORE THOROUGHLY.

ACCORDING TO OHIO REV. CODE SEC. 2969.26(A)(i) STATES, THAT, WHEN AN INMATE FILES A "GRIEVANCE," THE INMATE MUST SUBMIT "AN AFFIDAVIT STATING THAT THE GRIEVANCE WAS FILED AND THE DATE ON WHICH THE INMATE RECEIVED THE DECISION REGARDING THE GRIEVANCE." DEVISION (A)(2) STATES THAT THE INMATE MUST ATTACH "A COPY OF ANY WRITTEN DECISION REGARDING THE GRIEVANCE FROM THE GRIEVANCE SYSTEM."

(59)

IN THE PRESENT CASE, THE POLICY PRACTICE AT THE MIAMI COUNTY JAIL REQUIRES THAT ONCE THE GRIEVANCE IS FILED AND THEN DECIDED, THE INMATE IS ALLOWED TO READ THE WRITTEN DISPOSITION, BUT IS NOT GIVEN A COPY OF THE WRITTEN DECISION. THIS POLICY OR CUSTOM PRACTICE, VIOLATES THE OHIO REVISED CODE FOUND AT O.R.C. SEC. 2969.26(A)(1) AND (2). AS NOTED ABOVE, WHENEVER AN INMATE FILES HIS GRIEVANCE AND THEN FILES HIS LAW SUIT, A COPY OF THE GRIEVANCE AND A COPY OF THE WRITTEN DECISION MUST BE ATTACHED TO HIS LAW SUIT.

MARCUM HAS SENT A WRITTEN REQUEST TO LT. MARION, DEPUTY WARDEN, NOTIFYING HIM TO OBTAIN ALL GRIEVANCE(S) THAT MARCUM HAS FILED, ALONG WITH ALL WRITTEN DISPOSITIONS. AS OF TODAY'S DATE (NOV. 14, 2017) MARCUM HAS NOT RECEIVED COPIES OF HIS GRIEVANCES, NOR HAS MARCUM RECEIVED COPIES OF THE WRITTEN DISPOSITIONS MADE IN RESPONSE TO THOSE GRIEVANCES. MARCUM WILL SAY THAT HE HAS, IN DEED, EXHAUSTED THE ADMINI-

(60)

STRATIVE INMATE GRIEVANCE PROCEDURE. AS
SOON AS MARCUM RECEIVES WRITTEN DISPOSI-
TIONS OF ALL GRIEVANCES MARCUM HAS FILED,
HE WILL SUBMIT THEM TO THE COURT AS
REQUIRED BY THE OHIO REV. CODE.

MARCUM STATES THAT THE POLICY OR
CUSTOM PRACTICE AT MIAMI COUNTY JAIL
WHICH PREVENTS THE INMATE FROM OBTAIN-
ING THE WRITTEN DISPOSITIONS, VIOLATES
THE REQUIREMENTS OF OHIO REV. CODE SEC.
2969.26(A)(1) AND (2), AND DELAYS THE FIL-
ING OF THE CIVIL ACTION, AND THUS
IMPEDES UPON THE INMATE'S RIGHT TO
PETITION FOR A "REDRESS OF GRIEVANCE"
AND ACCESS TO THE COURTS, IN VIOLATION
OF THE FIRST, FIFTH, AND FOURTEENTH AMEND-
MENTS TO THE UNITED STATES CONSTITUTION.

THE SUPREME COURT HAS RULED THAT
" THE RIGHT OF ACCESS TO THE COURTS IS
INDEED BUT ONE ASPECT OF THE RIGHT OF
PETITION." SEE: CALIFORNIA MOTOR TRANSPORT CO
VS. TRUCKING UNLIMITED, (1972), 404 U.S. 508,
AT: 510 (CITING CASES). "[T]HE RIGHT OF
ACCESS TO THE COURTS IS AN ASPECT OF THE
FIRST AMENDMENT RIGHT TO PETITION THE
GOVERNMENT FOR REDRESS OF GRIEVANCES."
SEE: BILL JOHNSON'S RESTAURANTS VS.
NLRB (1983), 461 U.S. 731, 741., SEE, ALSO

(61)

JOHNSON VS. AVERY, (1969), 393 U.S. 483, 485.

THE SUPREME COURT HAS ALSO NOTED THAT THE "RIGHT OF ACCESS TO THE COURTS" IS ALSO ROOTED IN CONCEPTS OF "DUE PROCESS" PRINCIPLES. SEE, e.g., MURRAY VS. GIARRATANO, (1989), 492 U.S. 1, AT: 11, N. 6., AND AS AN ASPECT OF "EQUAL PROTECTION GUARANTEE." SEE, e.g., PENNSYLVANIA VS. FINLEY, (1987), 481 U.S. 551, AT: 557.

PLAINTIFF/ MARCUM STATES THAT THE RIGHT TO PETITION FOR REDRESS OF GRIEVANCE, AND THE RIGHT TO ACCESS TO THE COURTS ARE GROUNDED IN ALL THREE CONSTITUTIONAL PROVISIONS OF THE UNITED STATES CONSTITUTION. THE FIRST AMENDMENT'S "RIGHT TO PETITION FOR REDRESS" AND "FREE SPEACH" CONCEPTS, TO EXPRESS AND SAY IN A POLITICAL FORUM, ARE FIRST AMENDMENT GUARANTEES, CONNECTED WITH ONE'S RIGHT TO HAVING ACCESS TO THE COURTS.

LIKEWISE, SINCE THE RIGHT TO ACCESS TO THE COURTS IS A "SUBSTANTIVE" RIGHT, AS WELL AS A "PROCEDURAL DUE PROCESS" RIGHT, AND SINCE ALL LAWS MUST BE "EQUALLY" APPLIED UNIVERSALLY, MEANS THAT THE RIGHT TO ACCESS TO THE COURTS ARE PROTECTED BY THE 5TH AND 14TH AMENDMENTS, AS WELL AS THE 1ST.

(62)

IN THE PRESENT CASE, MARCUM HAS FILED A NUMBER OF DIFFERENT GRIEVANCES. SOME OF THOSE GRIEVANCES HAVE NOT BEEN RESPONDED TO. MARCUM DOES NOT KNOW THE ACTUAL DATES WHEN HIS GRIEVANCES WERE FILED, SIMPLY SO, BECAUSE NO PHOTO COPIES HAVE BEEN GIVEN BACK TO MARCUM TO KEEP.

MARCUM STATES THAT THE POLICY, OR CUSTOM PRACTICE AT MIAMI COUNTY JAIL, FAILING TO PROVIDE PHOTO COPIES FOR INMATES TO KEEP OF THEIR GRIEVANCES, AND OF THEIR WRITTEN DECISIONS DECIDED BY STAFF OFFICIALS, VIOLATE THE REQUIREMENTS OF OHIO REV. CODE SEC. 2969.26(A)(1) AND (2), AND FURTHERMORE, VIOLATE THE 1ST, 5TH, AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

THE DELAY, AND/OR REFUSAL, TO PROMPTLY PROVIDE COPIES OF THE WRITTEN GRIEVANCE, AND PHOTO COPIES OF THE WRITTEN DISPOSI- TIONS MADE IN RESPONSE TO THOSE GRIEVANCES, HAS CAUSED A DELAY IN HAVING MARCUM'S LAW SUIT ADDRESSED ON ITS MERITS.

ACCORDINGLY, MARCUM SEEKS AN INJUNC- TION AND A DECLARATORY JUDGMENT ONLY ON THIS CLAIM, ORDERING THE SHERIFF TO IMMEDIATELY CHANGE THE POLICY OR CUSTOM PRACTICE, BY REQUIRING COPIES TO BE

(63)

IMMEDIATELY PROVIDED PROMPTLY TO ALL INMATES
SO AS TO PREVENT ANY UNNECESSARY OBSTICLES
IN FILING CIVIL ACTIONS ARISING OUT OF
THE MIAMI COUNTY JAIL'S POLICY FOR FAILING
TO PROVIDE COPIES OF WRITTEN GRIEVANCES AND
DISPOSITIONS PROMPTLY.

IN ADDITION TO THE ABOVE, PLAINTIFF-
MARCUM ALSO ASSERTS THAT HIS FIRST, FIFTH,
AND FOURTEENTH AMENDMENT RIGHT TO "PETI-
TION FOR REDRESS OF GRIEVANCE," AND OF HIS
RIGHT TO "ACCESS TO THE COURTS" WAS VIOLATED,
STEMMING FROM THE CURRENT POLICY OR CUSTOM
PRACTICES OCCURING AT THE MIAMI COUNTY JAIL
FACILITIES, PREVENTING INMATES FROM BEING
ABLE TO PREPARE LEGAL DOCUMENTS AND BRIEF-
INGS. PLAINTIFF-MARCUM STATES THAT THE CURRENT
"LEGAL ASSISTANCE" PROGRAM AT THE MIAMI
COUNTY JAIL FACILITIES, DOES NOT PASS
CONSTITUTIONAL MUSTER.

IN ITS LANDMARK DECISION, BOUNDS VS.
SMITH (1977), 430 U.S. 817, AT: 828, THE SUPREME
COURT HELD THAT: "THE FUNDAMENTAL CONSTITU-
TIONAL RIGHT OF ACCESS TO THE COURTS REQUIRES
PRISON AUTHORITIES TO ASSIST INMATES IN THE
PREPARATION AND FILING OF MEANINGFUL LEGAL
PAPERS BY PROVIDING PRISONERS WITH ADE-
QUATE LAW LIBRARIES OR ADEQUATE ASSIST-
ANCE FROM PERSONS TRAINED IN THE LAW. "

(64)

FOLLOWING THE RULING IN BOUNDS, THE U.S.
SUPREME COURT DECIDED LEWIS vs. CASEY, (1996),
116 S.CT. 2174. THE LEWIS FIRST NOTED THAT
THE " BOUNDS [COURT] FOCUSED ON THE SAME
ENTITLEMENT OF ACCESS TO THE COURTS.
ALTHOUGH IT AFFIRMED A COURT ORDER REQUIR-
ING NORTH CAROLINA TO MAKE LAW LIBRARY
FACILITIES AVAILABLE TO INMATES, IT
STRESSED THAT THAT WAS MERELY 'ONE CON-
STITUTIONALLY ACCEPTABLE METHOD TO
ASSURE MEANINGFUL ACCESS TO THE COURTS,'
AND THAT 'OUR DECISION HERE ... DOES
NOT FORECLOSE ALTERNATIVE MEANS TO
ACHIEVE THAT GOAL." 116 S.CT. AT: 2179-2180.
    THUS, THE COURT IN LEWIS HELD THAT:
" ... [T]HE INMATE THEREFORE MUST GO ONE
STEP FURTHER AND DEMONSTRATE THAT THE
ALLEGED SHORTCOMINGS IN THE LIBRARY OR
LEGAL ASSISTANCE PROGRAM HINDERED HIS
EFFORTS TO PURSUE A LEGAL CLAIM. HE
MIGHT SHOW, FOR EXAMPLE, THAT A COM-
PLAINT HE PREPARED WAS DISMISSED
FOR FAILURE TO SATISFY SOME TECH-
NICAL REQUIREMENT WHICH, BECAUSE
OF DEFICIENCIES IN THE PRISON'S
LEGAL ASSISTANCE FACILITIES, HE COULD
NOT HAVE KNOWN." Id AT: 2180.

(65)

IN THE PRESENT CASE, THE MIAMI COUNTY JAIL PROVIDES ONLY ONE (1) OHIO REVISED CODE LAW BOOK. IT IS A PAPERBACK BOOK, TITLE 29 OF THE CRIMINAL STATUTES OF OHIO. THERE ARE NO CASE LAW MATERIALS AVAILABLE AT THE MIAMI COUNTY JAIL FACILITIES. THE LAW BOOK IS A (2015 Ed.)

THE POLICY OR CUSTOM PROCEDURES AT MIAMI COUNTY JAILS, DOES ALLOW ALL INMATES THE RIGHT TO SEND AN INMATE "REQUEST FORM" TO THE MAIN COUNTY LAW LIBRARY DOWN TOWN IN TROY, FOR PURPOSES OF REQUESTING CASE LAW MATERIALS TO BE PRINTED OFF WEST LAW COMPUTERS AND TO BE SENT BACK TO THE INMATE.

ALL THIS AT FIRST BLUSH SEEMS GREAT AND DANDY. HOWEVER, THE CLERK OR EMPLOYEE WHO WORKS AT THE MIAMI COUNTY LAW LIBRARY IS NOT ALLOWED TO CONDUCT "LEGAL RESEARCH" FOR ANY INMATE. ACCORDING TO THE CLERK OR EMPLOYEE FOR THE LAW LIBRARY, IS LIMITED ONLY TO PROVIDING CERTAIN ASSISTANCE. FOR EXAMPLE, THE EMPLOYEE WILL PRINT A CASE LAW OPINION ONLY IF THAT INMATE PROVIDES THE "NAME" OR "CITATION" NUMBER OF THE CASE. SEE: EXHIBIT (E) ATTACHED.

(66)

TO THE EXTENT THAT PLAINTIFF/MARCUM
HAS MISDRAFTED HIS COMPLAINT/WRIT,
MARCUM STATES THAT HE DOES NOT HAVE
ACCESS TO FORMAL PLEADING REQUIRE-
MENTS ON DRAFTING PRO SE COMPLAINTS
AND/OR PRO SE WRITS.

AS NOTED IN LEWIS, AN INMATE CAN
ESTABLISH A DENIAL OF ACCESS TO COURT
CLAIM WHEN "... [A] COMPLAINT HE PREPARED
WAS DISMISSED FOR FAILURE TO SATISFY
SOME TECHNICAL REQUIREMENT WHICH,
BECAUSE OF DEFICIENCIES IN THE
PRISON'S LEGAL ASSISTANCE FACILITIES,
HE COULD NOT HAVE KNOWN."

THUS, PLAINTIFF/MARCUM REQUESTS
FOR THE COURT TO OVERLOOK ANY DE-
FICIENCIES THAT THIS PLAINTIFF/PETI-
TIONER MAY HAVE MADE ON THE PLEADING
REQUIREMENTS. SEE, e.g., JENKINS VS. LANE,
(7TH CIR. 1992), 977 F.2d 266, 268-269 (WAIV-
ING THE REQUIREMENT THAT A PRISONER PROVE
PREJUDICE "WHERE THE PRISONER ALLEGES
A DIRECT, SUBSTANTIAL AND CONTINUOUS,
RATHER THAN A 'MINOR AND INDIRECT,'
LIMIT ON LEGAL MATERIALS" ON THE
GROUND THAT "A PRISONER WITHOUT ANY
ACCESS TO MATERIALS CANNOT DETERMINE
THE PLEADING REQUIREMENTS OF HIS

(67)

CASE, INCLUDING THE NECESSITY OF PLEAD-
ING)., STRICKLER VS. WATERS, (4TH CIR. 1993),
989 F.2d 1375, 1385 (ACKNOWLEDGING THE
POSSIBILITY THAT INJURY MAY BE PRESUMED
IN SOME CIRCUMSTANCES, e.g., DENIAL TO
ACCESS TO A LAW LIBRARY)., SOWELL VS. VOSE,
(1ST CIR. 1991), 941 F.2d 32, 35 (ACKNOWLEDG-
ING THAT A PRISONER MAY NOT NEED TO PROVE
PREJUDICE WHEN HE ALLEGES A "DEPRIVA-
TION OF ACCESS TO LEGAL MATERIALS.") SEE,
ALSO, HARRIS VS. YOUNG, (4TH CIR. 1983), 718
F.2d 620, 622 ("IT IS UNFAIR TO FORCE
AN INMATE TO PROVE THAT HE HAS A
MERITORIOUS CLAIM WHICH WILL REQUIRE
ACCESS UNTIL AFTER HE HAS HAD AN OPPOR-
TUNITY TO SEE JUST WHAT HIS RIGHTS
ARE")., SEE, ALSO, MAGEE VS. WATERS,
(4TH CIR. 1987), 810 F.2d 451, 452 (SUG-
GESTING THAT A PRISONER MUST IDENTIFY
THE "SPECIFIC PROBLEM HE WISHE[S]
TO RESEARCH.")

ALL OF THE ABOVE CIRCUIT COURT CASES
WERE CITED BY HONORABLE JUSTICE
STEVENS IN HIS "DISSENTING OPINION"
IN LEWIS VS. CASEY, 116 S.CT. AT: 2204
AT: N. 2 AND N.3., AND WERE CITED BY
THREE CONCURRING AND DISSENTING
JUSTICES.

(68)

THE POINT PLAINTIFF/MARCUM MAKES IS THIS: MARCUM IS ONE OF THE FEW INMATES THAT HAS READ U.S. SUPREME COURT CASES IN THE PAST. MARCUM IS FORTUNATE ENOUGH TO REMEMBER WHAT THOSE SUPREME COURT CASE NAMES PERTAINED TO. THUS, MARCUM WAS ABLE TO SEND AN "INMATE REQUEST" FORM TO THE MAIN COUNTY LAW LIBRARY IN DOWN TOWN TROY, OHIO, TO OBTAIN THOSE U.S. SUPREME COURT CASES THAT ARE CITED IN THIS COMPLAINT.

HOWEVER, AS THE COURT MAY CLEARLY SEE, MARCUM HAS NOT BEEN ABLE TO CITE ANY OHIO CASE LAW IN THIS Pro SE COMPLAINT, SIMPLY SO, BECAUSE MARCUM DOES NOT REMEMBER OR KNOW ANY OHIO CASE LAW NAME(S) OF OHIO COURT CASES TO SEND TO THE MIAMI COUNTY LAW LIBRARY TO REQUEST FOR PURPOSES OF HAVING THAT CASE SENT TO MARCUM AS AUTHORITY TO CITE.

MARCUM IS NOT ALLOWED TO GO TO THE MIAMI COUNTY LAW LIBRARY TO CONDUCT LEGAL RESEARCH IN PERSON. THE EMPLOYEE AT THE MIAMI COUNTY LAW LIBRARY IS NOT ALLOWED TO CONDUCT "LEGAL RESEARCH" FOR PLAINTIFF/MARCUM. MARCUM ALSO DOES NOT HAVE ANY BOOKS

(69)

OR LEGAL MATERIALS PERTAINING TO THE "PLEADING REQUIREMENTS" IN THE STATE OF OHIO. THUS, TO THE EXTENT THAT PLAINTIFF/MARCUM HAS DRAFTED A COMPLAINT IMPROPERLY, MARCUM ASKS THE COURT TO OVERLOOK THE STRICT PLEADING REQUIREMENTS, AND MARCUM ASKS THIS COURT TO "LIBERALLY CONSTRUE" PLAINTIFF/MARCUM'S PRO SE COMPLAINT.

THE U.S. SUPREME COURT HAS RULED THAT THE COURTS ARE REQUIRED TO REVIEW PRO SE CIVIL RIGHTS COMPLAINTS AND PRO SE HABEAS CORPUS PETITIONS, LIBERALLY. SEE, CF. ESTELLE VS. GAMBLE (1976), 429 U.S. 97 (NOTING THAT PRO SE CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983 ARE "LIBERALLY CONSTRUED.")

IN SUM, PLAINTIFF/MARCUM STATES THAT THE CURRENT POLICY PRACTICE OR CUSTOM AT THE MIAMI COUNTY JAIL FACILITIES REQUIRING INMATES TO WRITE DOWN THE "NAME OF THE CASE" OR "COURT CITATION" THEY NEED, AND PROVIDING LEGAL MATERIALS BASED ON THAT INFORMATION ONLY, IS FAR TOO INDEQUATE TO PROVIDE THE LEGAL RESEARCH "TOOLS" NEEDED TO ALLOW MIAMI COUNTY INMATES "ACCESS TO THE COURTS" ON THE

(70)

FILING OF CIVIL RIGHTS COMPLAINT(S) AND WRITS OF HABEAS CORPUS OR MANDA- MUS ACTIONS.

THE SUPREME COURT DECISION IN LEWIS STATED THAT THE CORRECTIONAL FACILITY MUST PROVIDE " ... THE TOOLS ... THAT THE INMATES NEED IN ORDER TO ATTACK THEIR SENTENCES, DIRECTLY OR COLLATERALLY, AND IN ORDER TO CHALLENGE THE CONDITIONS OF THEIR CONFINEMENT." LEWIS, 116 S.CT. AT: 2182.

THUS, THE SUPREME COURT HELD THAT TO ESTABLISH A BOUNDS VIOLATION, THE "ACTUAL INJURY" THAT AN INMATE MUST DEMONSTRATE IS THAT THE ALLEGED SHORT- COMINGS IN THE INMATE LIBRARY OR LEGAL ASSISTANCE PROGRAM HAVE HINDERED, OR ARE PRESENTLY HINDERING, HIS EFFORTS TO PURSUE A NONFRIVOLOUS LEGAL CLAIM. LEWIS, 116 S.CT AT: 2179-2181.

MARCUM STATES THAT THE LEGAL ASSISTANCE PROGRAM AT THE MIAMI COUNTY JAIL, HAS "HINDERED" HIS EFFORTS IN PURSUING ALL HIS LEGAL CLAIMS, AND HAS CAUSED "ACTUAL PREJUDICE." MARCUM STATES THAT SELF-HELP- RESEARCH-AID-MATERIALS FOR CIVIL RIGHTS VIOLATIONS, AND FOR HABEAS CORPUS, ARE NOT AVAILABLE, WHEN THEY SHOULD BE, FOR

(71)

ALL INMATES CONFINED AT THE MIAMI COUNTY
JAIL FACILITIES. PLAINTIFF/MARCUM STATES
THAT THE MIAMI COUNTY JAIL DOES NOT
HAVE THE OHIO RULES OF CIVIL PROCEDURE
NOR DO THEY HAVE THE OHIO RULES OF APPEL-
LATE PROCEDURE. THE ONLY LAW BOOK AVAIL-
ABLE AT THE MIAMI COUNTY JAIL FACILITIES
IS A PAPERBACK VERSION OF OHIO'S CRIMINAL
STATUTES, TITLE 29, (2015 Ed.) MARCUM ALSO
STATES THAT THE MIAMI COUNTY JAIL DOES
NOT HAVE ANY SELF-HELP AID MATERIALS ON
OHIO'S PLEADING-REQUIREMENTS.

ACCORDINGLY, PLAINTIFF MARCUM STATES
THAT THE POLICY PRACTICE OR CUSTOM RE-
QUIRING AN INMATE TO RECITE OFF THE
TOP OF HIS MEMORY, A "CASE NAME" OR
"CASE CITATION" NUMBER AS THE SOLE MEANS
OF LEGAL ACCESS MATERIALS AVAILABLE TO
MIAMI COUNTY JAIL INMATES, WITHOUT
PROVIDING ANY RESEARCH AID MATERIALS
TO THE INMATE TO BE ABLE TO KNOW
WHAT THE "CASE NAME" OR "CASE NUMBER"
CITATION IS, FAILS TO PROVIDE ACCESS
TO THE COURTS FOR THAT INMATE TO
CITE, AND THUS "HINDERS" THAT
INMATE'S ABILITY TO PREPARE HIS PLEAD-
INGS FOR FILING WITH THE COURTS, IN
VIOLATION OF THE 1ST, 5TH, AND 14TH AMENDMENTS.

(72)

ACCORDINGLY, PLAINTIFF/MARCUM SUES
SHERIFF DAVE DUCHAK IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY, DUE TO MR. DUCHAK'S
PURPOSEFUL DELIBERATE INDIFFERENCE TO-
WARDS PLAINTIFF/MARCUM'S RIGHT TO ACCESS
TO THE COURTS BASED ON THE FACT THAT:
(1) THE CURRENT POLICY PRACTICES FAILING
TO PROVIDE ANY RESEARCH AID MATERIALS
(SELF-HELP MANUALS AND RULES OF PLEADING
REQUIREMENTS ON PREPARING AND FILING
CIVIL RIGHTS ACTIONS AND STATE AND
FEDERAL HABEAS CORPUS ACTIONS) AND BY
REQUIRING INMATES TO RECITE FROM
MEMORY A "CASE NAME" OR "CASE CITA-
TION" NUMBER, AS THE EXCLUSIVE MEANS
TO OBTAIN LEGAL MATERIALS FROM THE
COUNTY LAW LIBRARY, IS FAR TOO INADE-
QUATE IN PROVIDING ACCESS TO THE COURTS
AND THUS, "HINDERED" PLAINTIFF/MARCUM'S
CONSTITUTIONAL GUARANTEED RIGHT TO
ACCESS TO THE COURTS., AND (2) PLAIN-
TIFF/MARCUM STATES THE POLICY OR CUSTOM
PRACTICE AT THE MIAMI COUNTY JAIL
FACILITIES, BY FAILING TO IMMEDI-
ATELY PROVIDE PHOTO COPIES OF INMATE
GRIEVANCES AND PHOTO COPIES OF THE
WRITTEN DECISIONS MADE IN RE-
SPONSE TO MARCUM'S GRIEVANCES,

(73)

CONSTITUTES A VIOLATION OF OHIO REV.
CODE SEC. 2969.26(A)(1) AND (2), AND THUS,
LIKEWISE, HAS "HINDERED" THE PLAIN-
TIFF'S RIGHT IN FILING HIS CIVIL
ACTION.

PLAINTIFF/MARCUM SEEKS ONE HUNDRED
THOUSAND DOLLARS COMPENSATORY DAMAGES SUE-
ING MR. DAVE DUCHAK IN HIS OFFICIAL
CAPACILITY. PLAINTIFF/MARCUM ALSO SUES
SHERIFF DAVE DUCHAK IN HIS INDIVIDUAL
CAPACITY BASED ON THIS CLAIM, FOR AN
AWARD OF TEN THOUSAND DOLLARS PUNI-
TIVE DAMAGES.

PLAINTIFF/MARCUM ALSO SEEKS AN
ORDER FOR INJUNCTION RELIEF AND FOR
DECLATORY JUDGMENT. PLAINTIFF ASKS
TO DECLARE THAT THE POLICY HINDER-
ING INMATE(S) RIGHT TO THE COURT BY
NOT PROVING PHOTO COPIES OF GRIEVANCES
AND PHOTO COPIES OF WRITTEN DECISIONS
VIOLATE BOTH STATE AND FEDERAL LAWS
AND DENIES ACCESS TO THE COURTS.
PLAINTIFF/MARCUM ASKS THE COURT TO
DECLARE THE PRESENT POLICY OR CUSTOM
PRACTICE HAVING LIMITED MEANS TO
OBTAIN LEGAL RESEARCH AID MATERIALS
LIKEWISE, VIOLATE STATE AND FEDERAL
LAWS, AND DENIES ACCESS TO THE COURTS.

(74)

PLAINTIFF/MARCUM ALSO ASSERTS A FOURTH, EIGHTH, AND FOURTEENTH AMENDMENT CLAIM AGAINST SHERIFF DAVE DUCHAK AND AGAINST ROB DAVIE, CORRECTIONAL OFFICER, BASED ON TWO GROUNDS: (1) CORRECTIONAL OFFICER ROB DAVIE USED UNNECESSARY EXCESSIVE USE OF FORCE AGAINST PLAINTIFF/MARCUM, WHICH DID CAUSE A "PHYSICAL INJURY" AND PSYCHOLOGICAL AND EMOTIONAL PAIN AND SUFFER-ING IN VIOLATION OF MARCUM'S CONSTITU-TIONAL RIGHTS-, AND (2) PLAINTIFF/MARCUM STATES THAT THERE IS RAPID ACTS OF VIO-LENCE OCCURING AT THE MIAMI COUNTY JAIL FACILITIES, TO THE POINT THAT THE MIAMI COUNTY JAIL(S) ARE NOT A WELL PROTECTED SAFE ENVIORNMENT, BUT, IN FACT, ARE THE PRODUCT OF "OVER CROWDINGNESS," COUPLED WITH A LOT OF "IDLE-TIME," CONFINED IN A RESTRICTED GEOGRIFICAL AREA, WITH LIMITED ACCESS TO FRESH AIR, SUN LIGHT AND EXERCISE, TO THE POINT THAT THE MIAMI COUNTY JAIL FACILITIES ARE TIME BOMB.

PLAINTIFF-MARCUM STATES THAT ON FRIDAY, OCTOBER 6TH, 2017, OFFICER ROB DAVIE, PURPOSELY, WITH DELIBERATE INDIFFERENCE, WHILE ACTING UNDER

(75)

COLOR OF STATE LAW, USED EXCESSIVE USE
OF FORCE, WHICH DID CAUSE A "PHYSICAL
INJURY," BLEEDING AND BRUISING ON
MARCUM'S WRISTS AND ANKLES, AND CAUS-
ING MARCUM TO SUFFER PHYSICAL, EMO-
TIONAL, AND PSYCHOLOGICAL PAIN AND
INJURIES IN VIOLATION OF THE 4TH,
8TH, AND 14TH AMENDMENTS TO THE UNITED
STATES CONSTITUTION.

MARCUM WAS BEING SHACKLED UP TO
BE TRANSPORTED TO THE MIAMI COUNTY
MUNICIPAL COURT TO APPEAR AT HIS SCHE-
DULED "ARRAIGNMENT HEARING." MARCUM
WAS INSIDE THE BOOKING AREA WITH
OFFICER ROB DAVIE. MR. DAVIE PUT
MARCUM'S SHACKLES ON HIS LEGS/ANKLES.
MARCUM DID NOT HAVE SOCKS ON. THUS,
MARCUM ATTEMPTED TO SLIDE HIS OUTTER
PANTS CLOTHING INSIDE LEG IRONS, TO
KEEP THE BEAR METAL FROM SCRAPPING
AGAINST MARCUM'S SKIN AND ANKLES.
IT WAS AT THAT POINT THAT OFFICER
ROB DAVIE SMACKED MARCUM'S HANDS
AWAY AND OFFICER DAVIE SQUEEZED
BOTH SHACKLES ON BOTH ANKLES TIGHT TO
THE POINT THAT THE LEG IRONS CUT
MARCUM'S SKIN ON HIS ANKLES AND
CAUSED BRUISING.

(76)

AFTER THAT, OFFICER DAVIE TOLD MARCUM TO "RAISE YOUR ARMS" SO THAT OFFICER DAVIE COULD PUT THE "BELLY BEAN" AROUND MARCUM'S WAIST. MARCUM COMPLIED BY RAISING HIS ARMS FAR ABOVE HIS WAIST LINE. HOWEVER, OFFICER DAVIE GRABS BOTH OF MARCUM'S ARMS AND FORCES BOTH OF MARCUM'S ARMS OVER HIS HEAD.

AFTER SECURING THE BELLY BEAN AROUND MARCUM'S WAIST, MARCUM WAS TOLD TO "LOWER YOUR ARMS," WHICH MARCUM COMPLIED TO DO. AT THAT POINT, OFFICER ROB PLACES ONE ARM INTO ONE OF THE HAND CUFFS AND SQUEEZES THE CLAMP-CUFF SUPER TIGHT AROUND MARCUM'S RIGHT WRIST.

MARCUM MOVED HIS LEFT HAND TO BRING IT CLOSE ENOUGH FOR OFFICER ROB TO PUT THE CUFF AROUND MARCUM'S LEFT WRIST. ROB SAID TO MARCUM: "DID I TELL YOU TO MOVE?" ROB GRABS MARCUM'S LEFT HAND AND FASTENS THE CUFF SUPER-TIGHT AROUND MARCUM'S LEFT WRIST.

ALL THIS OCCURED IN THE BOOKING AREA ON FRIDAY, OCT. 6TH, 2017, (APPROXIMATELY BETWEEN 7:00 A.M. AND 7:30 A.M.) THERE WAS A FEMALE OFFICER PRESENT, HER NAME IS MS. LORI. THERE WERE OTHER INMATES PRESENT IN THE BOOKING AREA WHO ALSO

(77)

WITNESSED THE INCIDENT. MARCUM WALKED
FROM THE BOOKING AREA TO THE OUTSIDE
AREA WHERE THE POLICE CRUIZER WAS
WAITING AT TO TRANSPORT MARCUM TO THE
COURTHOUSE. MARCUM COULD BARELY WALK
DUE TO THE SHACKLES BEING SO TIGHT.
THE SHACKLES ON MARCUM'S LEGS WERE SO
TIGHT THAT IT CAUSED A CUT AND BLEEDING
ON MARCUM'S RIGHT ANKLE. (A FEW DAYS
LATER, BRUISES APPEARED ON BOTH ANKLES
WHERE MARCUM HAD TO WALK WITH THEM BEING
SO TIGHT).

AFTER RETURNING FROM COURT. MARCUM
FILED A NUMBER OF GRIEVANCES AGAINST
ROB DAVIE FOR EXCESSIVE USE OF FORCE
AND FOR PAIN AND SUFFERING. MARCUM
ASSERTED THAT THE VIDEO SURVEILLANCE
VIDEO CAPTURED THE WHOLE SCENE ON
VIDEO. MARCUM ALSO ASSERTED THAT THERE
WAS A FEMALE OFFICER PRESENT (FIRST
NAME "LORI") WAS PRESENT., AND MAR-
CUM ASSERTED THAT THERE WERE OTHER IN-
MATES PRESENT WHO WITNESSED THE
EXCESSIVE USE OF FORCE.

IN RESPONSE TO MARCUM'S GRIEVANCE,
STAFF COVERED UP THE WHOLE SCENARIO
BY FIRST CLAIMING THAT THERE WAS
NO EVIDENCE TO SUBSTIATE THE CLAIMS,

(78)

AND THEN BY ATTEMPTING TO SHIFT THE BLAME
BY SAYING THAT MARCUM SHOULDN'T HAVE
MESSED WITH HIS SHACKLES. THUS, STAFF
ADDED INSULT TO INJURY.

PLAINTIFF/MARCUM SUES OFFICER
ROB DAVIE IN BOTH HIS "INDIVIDUAL" AND
"OFFICIAL" CAPACITY FOR THE WANTON
INFLICTION OF PAIN OF INJURY.

AT THE TIME WHEN THE INCIDENT
OCCURED, MARCUM WAS A "PRETRIAL DE-
TAINEE." AS A PRETRIAL DETAINER, THE
EXCESSIVE USE OF FORCE CLAUSE, IS
GOVERNED BY THE 4TH AND AND 14TH
AMENDMENTS TO THE UNITED STATES CON-
STITUTION. SEE, GENERALLY, GRAHAM VS
CONNOR (1989) 490 U.S. 386., SEE, ALSO,
JOHNSON, 481 F.2d AT: 1032-1033

THE 8TH AMENDMENT "CRUEL AND UNUSUAL"
PUNISHMENT CLAUSE IS APPLICABLE TO INMATES
WHO HAS ALREADY BEEN "CONVICTED."

IN TWO CASES, THE SUPREME COURT HELD
THAT THE CRUEL AND UNUSUAL PUNISHMENT CLAUSE
COULD BE VIOLATED, EVEN IN MINOR CASES.
THE FIRST IS ROBINSON US. CALIFORNIA
(1962), 370 U.S. 660. IN THAT CASE, THE
COURT RULED THAT A SENTENCE OF 90
DAYS IMPRISONMENT FOR VIOLATION OF A
CALIFORNIA STATUTE MAKING IT A CRIME

(79)

TO "BECOME ADDICTED TO THE USE OF NAR-
COTICS" WAS RULED "CRUEL AND UNUSUAL"
PUNISHMENT.

THE NEXT CASE WAS POWELL VS. TEXAS, (1968),
392 U.S. 514. IN THIS CASE THE SUPREME COURT
DISTINGUISHED ROBINSON, WHEREIN THE
COURT SUSTAINED A CONVICTION FOR DRUKE-
NESS IN A PUBLIC PLACE AND A FINE OF
$20.00. FOUR JUSTICES DISSENTED ON THE
GROUND THAT ROBINSON WAS CONTROLLING. THE
ANALYSIS IN BOTH CASES WAS THE SAME.,
ONLY THE CONCLUSION AS TO WHETHER OR
NOT THE PUNISHMENT WAS EXCESSIVE
DIFFERED.

IN O'NEIL VS. VERMONT, (1892), THE
SUPREME COURT APPLIED THE ANCIENT MEAN-
ING TO CRUEL AND UNUSUAL PUNISHMENT...
"[I]TS APPLIED USUALLY TO PUNISHMENTS WHICH
INFLICT TORTURE, SUCH AS THE RACK, THE
THUMB-SCREW, THE IRON BOOT, THE STRETCHING
OF LIMBS, AND THE LIKE, WHICH ARE
ATTENDED WITH ACUTE PAIN AND SUFFER-
ING." Id. 144 U.S. AT: 339-340

IN WEEMS VS. UNITED STATES, (1910),
217 U.S. 349, THE SUPREME RULED IT WAS
"CRUEL AND UNUSUAL" PUNISHMENT TO SEN-
TENCE A MAN TO "HARD LABOR" WHILE
"WEARING LEG IRONS."

(80)

IN TROP VS. DULLES, (1958), 356 U.S. 86, THE SUPREME COURT STATED THAT: "[T]HE QUESTION IS WHETHER [A] PENALTY SUB-JECTS THE INDIVIDUAL TO A FATE FOR-BIDDEN BY THE PRINCIPLE OF CIVILIZED TREATMENT GUARANTEED BY THE [CLAUSE]." 356 U.S. AT: 100 N. 32. "... THE BASIC CONCEPT UNDERLYING THE [CLAUSE] IS NOTHING LESS THAN THE DIGNITY OF MAN." Id. AT: 100.

THUS, THE COURT REASONED, THAT, THERE WILL BE THOSE CASES WHERE THERE IS NO "PHYSICAL INJURY" AT ALL, OR, THAT THE PHYSICAL INJURY WAS MINOR, BUT, NEVER-THELESS, THE FACT THAT THERE WAS SEVERE MENTAL OR EMOTIONAL INJURY, IS SUF-FICIENT TO STATE AN EIGHTH AMEND-MENT CLAIM FOR CRUEL AND UNUSUAL PUNISHMENT. FURMAN VS. GEORGIA, (1972), 408 U.S. 238, AT: 271-272

APPLYING THE EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT STANDARD, IS THE SAME OR SIMILAR STANDARD THAT THE SUPREME COURT APPLIES IN 4TH AMEND-MENT "EXCESSIVE USE OF FORCE." SEE GRAHAM VS. CONNOR, (1989) 490 U.S. 386., SEE, ALSO, JOHNSON, 481 F.2d AT: 1032-1033

(81)

IN THE PRESENT CASE, PLAINTIFF/MARCUM SUFFERS EXTREME SEVERE MENTAL AND EMOTIONAL DISTRESS AND WORRINESS THAT OFFICER ROB MAY CAUSE FURTHER INJURY AGAINST MARCUM. OFFICER ROB WORKS INSIDE THE JAIL. MARCUM CONSTANTLY WORRIES THAT MR. DAVIE WILL RETAILIATE AND INFLICT OTHER INJURIES AGAINST MARCUM. MARCUM HAS HAD NIGHTMARES THAT OFFICER ROB HANDCUFFS MARCUM AND PUNCHES HIM.

IN FACT, OFFICER ROB RECENTLY HAD ANOTHER ALTERCATION WITH AN INMATE HERE AT THE JAIL THAT RESULTED IN THE OTHER INMATE BEING TAKEN TO THE HOSPITAL. THE INCIDENT BEGAN OVER SOMETHING SO MINOR WHEN THAT INMATE WANTED A "SECOND GLASS OF KOOL AID" THAT ESCLALATED INTO A PHYSICAL ALTERCATION, REQUIRING OUTSIDE MEDICAL TREATMENT AT A HOSPITAL. INMATES ARE ALLOWED ONLY ONE GLASS OF KOOL AID. THAT INCIDENT OCCURED WITHIN THE LAST WEEK.

MARCUM FEELS ANXIETY, WORRINESS, FEAR, DEPRESSION, AND SADNESS BECAUSE OF OFFICER ROB DAVIE, AS WELL AS AN ANTICIPATION OF DANGER. MARCUM IS CONSTANTLY ON EDGE, AND SOMETIMES

(82)

LIES AWAKE IN BED FOR LONG HOURS INTO
THE LATE HOURS WITHOUT SLEEP.

ACCORDINGLY, MARCUM IS EXPERIENCING
DEGREES OF ANGUISH THAT "SHOCKS THE
CONSCIOUSNESS" OF HIS MIND. MARCUM EX-
PERIENCES SHAKES AND LOSS OF APPETITE,
AS WELL AS RAPID HEART BEAT, AND BREATH-
ING EVERYTIME HE SEES OR COMES INTO
CONTACT WITH ROB DAVIE.

WHEREFORE, PLAINTIFF/MARCUM SUES
OFFICER ROB DAVIE IN BOTH HIS INDI-
VIDUAL AND OFFICIAL CAPACITIES. MAR-
CUM STATES THAT: (1) HE SEEKS AN
AWARD OF ONE HUNDRED THOUSAND DOLLARS
IN COMPENSATORY DAMAGES AGAINST OFFICER
ROB DAVIE., (2) MARCUM SEEKS AN AWARD
OF TEN THOUSAND DOLLARS IN PUNITIVE
DAMAGES AGAINST OFFICER ROB DAVIE.,
(3) MARCUM REQUESTS A WRITTEN APOLOGY
BY OFFICER ROB DAVIE., AND (4) MARCUM
ASKS THAT A T.P.O. ORDER (TEMP PRO-
TECTION ORDER) ISSUE BE ISSUED PUR-
SUANT TO THIS COURTS POWERS, ORDERING
OFFICERS NOT TO HARASS OR RETAILIATE
AGAINST PLAINTIFF/MARCUM. PLAINTIFF-
MARCUM STATES THAT, AS A PRE-TRIAL
DETAINER, ON OCT. 6TH, 2017, OFFICER DAVIE
VIOLATED MARCUM'S 4TH AND 14TH AMENDMENT RIGHTS.

(83)

TURNING NOW TO THE UNCONSTITUTIONAL
LIVING CONDITIONS AT THE MIAMI COUNTY
JAIL FACILITIES

PLAINTIFF/MARCUM STATES THAT SHERIFF
DAVE DUCHAK IS IN VIOLATION OF THE 8TH
AND 14TH AMENDMENT RIGHTS AS GUARANTEED
BY THE UNITED STATES CONSTITUTION
BASED ON OVER CROWDINGNESS, COUPLED WITH
THE FACT THAT THE JAIL INMATES ARE BEING
DEPRIVED OF ADEQUATE SUN LIGHT, ADEQUATE
FRESH AIR, AND ADEQUATE PHYSICAL EXERCISE.

PLAINTIFF/MARCUM HAS BEEN TO THE
OUTSIDE REC YARD ONLY ONCE WITHIN THE
PAST ONE-MONTH-AND-A-HALF TIME PERIOD.

PLAINTIFF/MARCUM FURTHER STATES: NOW
THAT THE SEASONS HAVE CHANGED, WITH A
DROP IN THE TEMPERATURE, THAT THE MIAMI
COUNTY JAIL HAS A POLICY OR CUSTOM PRAC-
TICE THAT RESTRICTS ALL MIAMI COUNTY
JAIL INMATES FROM BEING ALLOWED TO
GO OUTSIDE TO THE YARD FOR RECREATION,
SUN LIGHT, FRESH AIR, AND EXERCISE.
MARCUM STATES THAT THE NEW MIAMI COUNTY
JAIL HOLDS UP TO 60 INMATES IN EACH
DORM-STYLE HOUSING UNIT. INMATES ARE CON-
STANTLY RESTRICTED TO THEIR HOUSING UNIT.
INMATES FEEL IRRITABLE, AND CUPED-UP, AND
SHORT-FUSED TEMPERS, WITH FRUSTRATION.

(84)

WHEN ALL OF THESE FACTORS ARE COM-
BINED TOGETHER, CREATES A VIOLENT
HOSTILE ENVOIRNMENT LEADING TO
RAPID ACTS OF VIOLENCE.

OHIO REV. CODE SEC. 2921.44(F), MAKES
IT A CRIMINAL OFFENSE AGAINST THE
SHERIFF WHEN HE IS IN DERELICTION OF
DUTY. LIKEWISE, OHIO REV. CODE $341.01
STATES THAT THE SHERIFF IS THE EXECU-
TIVE-HEAD-OFFICIAL IN CHARGE OF THE
JAIL.

THE LANDMARK DECISION DECIDED
BY THE SUPREME COURT, RHODES V. CHAP-
MAN, (1981), 452 U.S. 337, HOLDS THAT IT
IS CRUEL AND UNUSUAL PUNISHMENT, IN
VIOLATION OF THE 8TH AND 14TH AMEND-
MENTS TO THE UNITED STATES CONSTITU-
TION, WHEN THE PRISON ENVOIRNMENT
BECAME TOO OVERCROWDED TO THE POINT
THAT THERE WERE ACTS OF VIOLENCE
AND WHERE THEIR WERE BREAKDOWNS
IN LIFES BASIC NECESSITIES, SUCH
AS LACK OF SUN LIGHT, LACK OF
FRESH AIR, OR LACK OF FOOD, OR
WHERE THE PRISON OFFICIALS WERE
UNABLE TO PROTECT THE NUMBER OF
INMATES RATIO, AND WHERE THERE IS
A BREAKDOWN IN PHYSICAL EXERCISE.

(85)

PLAINTIFF/MARCUM STATES THAT SHERIFF
DAVE DUCHAK IS IN VIOLATION OF THE 8TH
AND 14TH AMENDMENTS TO THE UNITED
STATES CONSTITUTION ARISING OUT OF
MR. DUCHAK'S DELIBERATE INDIFFERENCE TO
THE SAFETY AND WELL BEING TO THE IN-
MATES LIFE BASIC NEEDS.

IN FARMER VS. BRENNAN, (1994), 511 U.S.
825, AT: 845, THE SUPREME COURT RULED
IN CIVIL RIGHTS CASE UNDER SEC. 1983,
THAT A PRISONER NEED NOT SUFFER PHY-
SICAL INJURY BEFORE OBTAINING RELIEF
FROM THE COURT "BECAUSE ONE DOES NOT
HAVE TO AWAIT THE CONSUMMATION OF
THREATENED INJURY TO OBTAIN PREVEN-
TIVE RELIEF." SEE, ALSO, HELLING VS.
MCKINNEY, (1993), 509 U.S. 25, 33 (OBSERV-
ING THAT PRISONERS MAY OBTAIN RELIEF
"EVEN THOUGH IT WAS NOT ALLEGED THAT
THE LIKELY HARM WOULD OCCUR IMMEDI-
ATELY AND EVEN THOUGH THE POSSIBLE
[HARM] MIGHT NOT AFFECT ALL OF THOSE
[AT RISK]") (DISCUSSING HUTTO V. FINNEY,
(1978), 437 U.S. 678)., SEE, ALSO, PENNSYL-
VANIA VS. WEST VIRGINIA, (1923)
262 U.S. 553, AT: 593 (NOTING THAT
ONE DOES NOT HAVE TO WAIT FOR THE
THREATENED INJURY TO OCCUR TO FILE SUIT).

(86)

IN TODAY'S AGE, "THE EVOLVING STAN-
DARD OF DECENCY THAT MARK THE PRO-
GRESS OF A MATURING SOCITY," TROP
VS. DULLES, 356 U.S. AT 100-101, PRO-
HIBIT THE THREATENED INJURIES ARIS-
ING IN THE MIAMI COUNTY JAIL FACI-
LITIES.

ACCORDINGLY, PLAINTIFF/MARCUM SUES
SHERIFF DAVE DUCHAK IN HIS OFFICIAL
CAPACITY FOR AN AWARD OF ONE HUNDRED
THOUSAND DOLLARS COMPENSATORY DAMAGES,
AND FOR TEN THOUSAND DOLLARS IN
PUNITIVE DAMAGES.

PLAINTIFF/MARCUM ALSO SEEKS
DECLARATORY JUDGMENT AND INJUNCTION
RELIEF AGAINST SHERIFF DAVE DUCHAK
ON GROUNDS THAT THE CURRENT POLICY
OR CUSTOM PRACTICES OCCURING AT THE
MIAMI COUNTY JAIL(S) DEPRIVING
INMATES OF LIFE'S BASIC NEEDS,
AND BY OVER CROWDING INMATES, HAS
CREATED AN UNSAFE THREATENED LIVING
ENVIRONMENT, THAT THREATENS THE
MENTAL, PHYSICAL, AND EMOTIONAL
STATE OF INMATES, AND INFLICTS
THE UNNECESSARY INFLICTION OF PAIN
AND SUFFERING, IN VIOLATION OF THE
8TH AND 14TH AMENDMENTS, U.S. CONSTITUTION.

(87)

WHEREFORE, IN CONCLUSION, PLAINTIFF-PETITIONER, TED MARCUM, RESPECTFULLY ASKS THIS HONORABLE COURT TO GRANT ALL CLAIMS ASSERTED BY THIS PLAINTIFF/PETITIONER TO BE GRANTED.

PLAINTIFF/PETITIONER ALSO ASKS THIS HONORABLE COURT TO GRANT ANY OTHER APPROPRIATE RELIEF THAT THE COURT MAY FIND APPROPRIATE IN PLAINTIFF/PETITIONER'S FAVOR.

VERY RESPECTFULLY SUBMITTED,

Ted Marcum

TED MARCUM, PRO SE
MIAMI COUNTY JAIL
2042 NORTH COUNTY RD. 25-A
TROY, OHIO 45373

( 88 )

## CERTIFICATE OF SERVICE

THIS IS HEREBY TO DECLARE THAT THE FOREGOING COMPLAINT, AND WRIT OF HABEAS CORPUS / WRIT OF MANDAMUS, HAS BEEN SERVED UPON THE CLERK OF THE MIAMI COUNTY COURT OF COMMON PLEAS AND UPON ALL NAMED DEFENDANT / RESPONDENTS SERVED AT 201 WEST MAIN STREET, TROY, OHIO 45373, ON THE 21 DAY OF NOVEMBER, 2017 BY VIA HAND DELIVERY THROUGH SERVICE BY THE SERVICE OF THE SHERIFF.

Ted Marcum

TED MARCUM / PLAINTIFF PETITIONER


## AFFIDAVIT OF VERITY

AFFIANT, TED MARCUM, DOES HEREBY DECLARE, BY SWORN AFFIRMATION AND OATH, AFTER HAV- ING BEEN DULY CAUTIONED AND SWORN, STATES AND SAYS THAT: THE FACTS AND LEGAL CLAIMS CLAIMS AS ASSERTED IN THE FOREGOING COMPLAINT & WRIT, BE, AND HEREBY IS, ARE WHOLLY CORRECT AND TRUE, TO THE BEST ABILITIES OF THIS AFFIANT AND HE VERILY BELIEVES THE SAME AS TRUE.

SO SWORN AND SUBSCRIBED TO IN MY PRESENCE ON THE 17 DAY OF NOVEMBER, 2017.

expire 3-10-2019          Ted Marcum

NOTARY OF OHIO          TED MARCUM / AFFIANT

EXHIBIT (A)

10/22/2017 2:55:07 PM

## jlacinmt.num = 13226

## Name Number: 30603          **Confined MSO**

TED  MARCUM, W Male, DOB: 09/19/1968
Current Booking: 10/05/2017 15:54:56 Scheduled Release: 04/02/2018 05:54:56
Current Location: POD C

| Bank Account: | *1* |
| Account Name: | *Inmate Account* |
| Open Date: | *09/23/2017 16:16:22* |
| Account Description: | *Inmate Accounts* |
| Close Date: | *10/03/2017 12:40:59* |

| Date | By Type Reconciled Deposited | Deposit Account Deposit |
| Withdrawal Account Withdrawal Balance Check | | Memo |

09/23/2017 16:16:22   T A SEDAM RCVD                    INMATE ACCOUNT   0.00
                    0.00            ZERO BALANCE  BOOK IN

09/25/2017 18:47:51   R E VEST RCVD                 INMATE ACCOUNT   10.00
                    10.00                 178212

09/26/2017 00:49:46 P A GULLETTE  CM              COMMISSARY MASTER ACCOUNT
      INMATE ACCOUNT     2.89   7.11    Inmate Commissary Purchase #   250630

10/03/2017 12:40:51   C L FOSTER NZER
      INMATE ACCOUNT     7.11   0.00

Copyright © 2007-2017 All rights reserved.  Spillman Technologies, Inc.

EXHIBIT (B)

**jlacinmt.num = 13344**

10/22/2017 2:53:00 PM

**Name Number: 30603**　　　　**Confined MSO**

TED  MARCUM, W Male, DOB: 09/19/1968
Current Booking: 10/05/2017 15:54:56 Scheduled Release: 04/02/2018 05:54:56
Current Location: POD C



| Bank Account: | *1* |
| Account Name: | *Inmate Account* |
| Open Date: | *10/05/2017 16:01:47* |
| Account Description: | *Inmate Accounts* |
| Close Date: | |

Date　　By Type Reconciled Deposited Deposit Account Deposit Withdrawal Account
Withdrawal Balance Check　Memo

10/05/2017 16:01:48 K M QUEEN RCVD　　　　INMATE ACCOUNT　0.00
　　0.00　　BOOK IN

Copyright © 2007-2017 All rights reserved.  Spillman Technologies, Inc.

EXHIBIT (C)

11/17/2017 15:06:10

## jlacinmt.num = 13344

### Name Number: 30603        Confined MSO
TED  MARCUM, W Male, DOB: 09/19/1968
Current Booking: 10/05/2017 15:54:56 Scheduled Release: 04/02/2018 05:54:56
Current Location: POD C

Bank Account:                           *INMATE ACCOUNT*
Account Name:                           *Inmate Account*
Open Date:                              *10/05/2017 16:01:47*
Account Description:                     *Inmate Accounts*
Close Date:
. Date        By         Type Reconciled Deposited Deposit Account Deposit
Withdrawal Account Withdrawal Balance          Memo

11/15/2017 00:51:14 J R WELLS MED - MEDICAL EXPENSE
    INMATE ACCOUNT     2.05    2.05 ANTIFUNGAL 11/11/17

10/05/2017 16:01:48 K M QUEEN RCVD - RECEIVED MONEY          INMATE ACCOUNT    0.00
                    0.00       BOOK IN
Balance:                                -2.05

Copyright © 2007-2017 All rights reserved. Spillman Technologies, Inc.

EXHIBIT (D)

# Miami County Incarceration Facility



# Inmate Handbook

    a. Children of all ages will be permitted to visit any adult inmate during all hours on Sunday and during evening visitation hours only (6:00 PM – 8:00 PM) the rest of the week. The children must be accompanied by their parent(s) or legal guardian. **NO CONTACT VISITS ARE PERMITTED**. A birth certificate or photo ID must be produced by the parent identifying the child.

    b. There will be no smoking by inmate visitors during visitation.

    c. In order for the inmate's visitor(s) to visit, they will have to provide some type of government issued picture identification. This identification must show the visitor's date of birth.

    d. With proper identification, clergy and attorneys may visit an inmate between the hours of 8:00 AM and 9:00 PM (excluding meal times).

    e. Visits or interviews by representatives of the news media must be approved by the Sheriff or his designee.

    f. Money will only be accepted during visitation check-in or by mail.

    g. Special visits or interviews may be permitted at the discretion of the jail administrator or his designee.

    h. Inmate workers of the Miami County Incarceration Facility may have extended visits (not to exceed one hour) during regular visitation hours. Visitation may not be scheduled to interrupt normal required duties.

    i. Paperback books will be accepted from family members VIA mail only (i.e. from Amazon), with a receipt. All books are subject to review and search by staff and will become property of the MCIF library upon release. No books with staples will be permitted.

2. There will be no limit on the amount of incoming and outgoing first-class correspondence. All mail will go through the U.S. Postal Service.

    a. Incoming correspondence to any inmate will be opened, inspected, approved/disapproved for money, narcotics, drugs, tools of escape, weapons, photos or any other items of physical contraband prior to reaching the pod. Legal mail will be opened in front of the inmate.

    b. Outgoing correspondence may not be opened, inspected or censored.

    c. Mail will not be passed from inmate to inmate.

    d. The Miami County Incarceration Facility will provide writing materials and postage for indigent inmates. This will be limited to two letters per week.

    e. Once an inmate has been released, any further mail will be returned to the sender. Such mail without a return address will be placed in the inmate's file.

    f. Mail addressed to the Sheriff, Judges, Parole or Probation personnel of Miami County, will not require a stamp. The jail staff will make sure that it arrives to its destination.

    g. Inmates are allowed a limit of five (5) pictures on their person at any time. The pictures must come through the mail and must be of a decent nature (no nude pictures). There will be no Polaroid pictures allowed at any time. Any pictures that do not meet the facility rules or any pictures exceeding five (5) will be placed with the inmate's property.

    h. There will be no packages received through the mail for any inmate. Any package that is sent to this facility will be returned to the sender.

    i. The inmate must have their name and return address written on every outgoing envelope.

3. Each inmate will have equal opportunity to make a personal phone call.

    a. No call will be made to the Public Defender's Office by an inmate unless requested by the Public Defender.

    b. Phones are provided in each of the pods. They will be turned on at 7:00 AM and turned off at 10:00 PM. Calls are limited to 20 minutes at a time. This means that other inmates will be permitted phone calls between your calls. Inmate workers will not be permitted to make phone calls that interrupt their duties.

    c. All inmate calls will be made: collect to the receiving party, by using a phone calling card purchased through the facility commissary, or by account set up through the party being called.

    d. Inmates being held in a holding cell will be permitted to make three (3) personal phone calls per week, ten (10) minutes each, except those being disciplined. Inmates being disciplined, who are not sentenced, will be permitted to call their attorney. Corrections officers should dial the phone number and confirm the call for the inmate.

EXHIBIT (E)



# MIAMI COUNTY SHERIFF'S OFFICE
201 W. MAIN ST., TROY, OH 45373          (937) 440-6085

DAVE DUCHAK, SHERIFF

## MIAMI COUNTY JAIL / INCARCERATION FACILITY
## INMATES REQUEST FOR ASSISTANCE



**TO:**   **ALL INMATES;**

TO MIAMI
COUNTY LAW
LIBRARY

This form is for your convenience to request assistance while confined in the Miami County Jail. Complete the form stating the type of assistance that you are requesting and then return it to one of the corrections officers. Your request will be answered within a reasonable time period. All requests for health care services must go on a Request for Health Care Services form (MCS-12-JAIL).

INMATE REQUEST BOX IN: WEST LAW 3 OUT AND NEW OFF 2 OLD 2 NITH 1 OUT UNIT STATUTES

**NAME:** TED MARCUM          **CELL BLOCK/POD-BED#:** C H   **DATE:** 11 / 6 / 20 17

### NATURE OF REQUEST
(use back of form if needed)

(1) I NEED 5 CONTROLLING CASES BY OHIO SUPREME COURT OR COURT OF APPEAL CASES CONSTRU-ING O.R.C. SEC. 2935.14

(2) I NEED 10 CONTROLLING CASES BY OHIO SUPREME COURT CASES OR COURT OF APPEAL CASES THAT CONSTRUED O.R.C. § 2935.20.

**Received By C.O.: Unit #** 109      **Time:** 2109    **Date:** 11 / 6 / 20 17

**REPLY:** I cannot do this for you. I am not able to do actual research for you, which this would be. You would have to find the cases and give me the case name & cite information, like you have on your other request. R ch 11/9/17

**Sergeant:** _____   **Date:** ___ / ___ / 20 ___

**Lieutenant:** _____   **Date:** ___ / ___ / 20 ___

**JA / AJA:** _____   **Date:** ___ / ___ / 20 ___

MCS-11-JAIL (7/14/2017)

EXHIBIT (F)

.017  2:20PM   Miami Co Municipal Court

No. 5961   P. 4

## BETWEEN
## .AMI COUNTY MUNICIPAL COURT & MIAMI COUNTY SHERIFF'S DEPARTMENT

REQUESTED BY:  Jaemie Kessler

DATE: 06 / 23 / 2017

NAME:  Ted Marcum

DOB: 09 / 19 / 1968   SSN: 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

INFORMATION REQUESTED:  Outdate - Credit time served - Consecutive

Gutmann

|  | SENTENCE DATE | SENTENCE LENGTH |
|---|---|---|
| CASE: 2017 CR A 3729 TROY - S. Gates | | |
| CHARGE: B&E / Attempted - 2923.02 | 10-12-17 | 180 days |
| CASE: | | |
| CHARGE: | | |
| CASE: | | |
| CHARGE: | | |
| CASE: | | |
| CHARGE: | | |
| CASE: | | |
| CHARGE: | | |
| CASE: | | |
| CHARGE: | | |
| CASE: | | |
| CHARGE: | | |

180
- 8
172

10-5-17     10-12-17     8

(172)

CREDIT DAYS SERVED     8

OUTDATE     4-2-18

COMMENTS